BUNGE CORPORATION, Petitioner,

v.

SECRETARY OF LABOR and the Occupational Safety and Health Review Commission, Respondents.

No. 79–1906.

United States Court of Appeals,
Fifth Circuit.
Unit A

March 5, 1981.

Monroe & Lemann, Alvin J. Bordelon, Jr., Andrew P. Carter, David E. Walker, New Orleans, La., Lynn E. Pollan, New York City, for petitioner.

Carin A. Clauss, Sol. of Labor, Ann D. Nachbar, Allen H. Feldman, Benjamin W. Mintz, U. S. Dept. of Labor, Marleigh Dover Long, Atty., Dept. of Justice, Washington, D. C., James E. White, Regional Sol., U. S. Dept. of Labor, Dallas, Tex., for respondents.

Before GOLDBERG, POLITZ and SAM D. JOHNSON, Circuit Judges.

SAM D. JOHNSON, Circuit Judge:

This is an appeal from the Occupational Safety and Health Review Commission (Commission). The Commission found petitioner Bunge Corporation (Bunge) to have seriously and repeatedly violated an Occupational Safety and Health Administration (OSHA) housekeeping regulation. The issues before this Court are whether there is substantial evidence that Bunge violated the housekeeping regulation, whether there is substantial evidence that the violation was serious, and whether that violation can properly be considered a repeated violation within the meaning of the Occupational Safety and Health Act—the latter issue one

of first impression in this Circuit. This Court affirms the Commission decision.

## I. *Facts*

Bunge owns and operates over one hundred grain elevators in the United States, and is one of the world's largest grain handlers. The elevator involved in this litigation is located at Destrehan, Louisiana. It handles between 1,000,000 and 1,500,000 bushels of grain daily and generates approximately 59 tons of grain dust each day.

Depending on the size of the dust particles, some of it becomes suspended in the air, while the remainder settles on ledges, stairs, floors, machinery, and other surfaces throughout the grain elevator. Bunge maintains many dust control systems throughout the elevator that pick up dust at locations where there is significant grain turbulence. In addition, manual clean-up activities are required for dust in places not adequately reached by the vacuums.

This facility was twice previously cited for violations of the OSHA housekeeping regulation, 29 C.F.R. § 1910.22(a)(1), one of the general standards.[1] In 1973, Bunge was cited for dust accumulations on equipment, and cited for dust piles, hoses, ropes, and electric cords in walking areas. In 1975, Bunge was again cited for violation of the housekeeping standard, this time for metal and wood pieces, hoses, wire rope cable, and manilla rope left in walking areas. Neither citation was contested by Bunge. Bunge elevators have also been cited at three other locations for nonserious violations of the housekeeping standards; in one instance for dust accumulation. Bunge contested none of these citations.[2]

An OSHA compliance officer inspected the Destrehan facility between February 28 and March 17, 1978. As a result OSHA

issued citations against Bunge. One was for willful violation of the housekeeping standard. The latter citation listed forty-two locations where dust and grain had accumulated; this condition was alleged to be poor housekeeping and to create a fire hazard.[3] A $10,000 penalty was proposed and abatement of the violation immediately ordered. Bunge timely contested the citation and a hearing was set before an administrative law judge (ALJ) of the Commission. The Secretary of Labor alleged that the violation of the housekeeping regulation was willful, repeated, and serious, and requested the $10,000 penalty.

At the hearing, Bunge stipulated that the OSHA compliance officer observed forty-two instances of poor housekeeping, which consisted primarily of dust and grain accumulations. The company at the same time contended that since it had undertaken considerable effort and expense to control its dust problem, the violation was not "willful." Bunge also disputed the "serious" characterization of the hazard posed by the dust accumulations on the ground that the evidence demonstrated neither the likelihood of an explosion nor Bunge's actual or constructive knowledge of the explosion hazard.

The ALJ affirmed the citation. He held that the violation was repeated and serious, but not willful, and assessed the $10,000 penalty. This decision became a final order of the Commission by operation of law and Bunge timely appealed to this Court.

## II. *The Violation and Seriousness of the Violation of the Housekeeping Regulation*

### A. *The Violation*

■ It is undisputed that the dust accumulation existed at the elevator—Bunge

1. 29 C.F.R. § 1910.22(a), part of the general requirement regulations and entitled "Walking-Working Surfaces," provides:
 (a) Housekeeping
 (1) All places of employment, passageways, storerooms and service rooms shall be kept clean and orderly and in a sanitary condition.

2. In 1970 and again in 1972 there were explosions at the Destrehan elevator. Whether the

explosions were grain dust explosions is unknown.

3. One location had an accumulation twenty-one inches deep. Some accumulations of grain had been there so long the grain had either rotted or had germinated (some growths reaching up to ten inches in height). At some locations the dust and grain were mixed with oil or hydraulic fluid.

stipulated at the hearing to the existence of the dust accumulations. Section 1910.-22(a)(1) requires all places of employment, passageways, storerooms, and service rooms be kept in a clean, orderly, and sanitary condition. Therefore, there is substantial evidence to support the finding that the housekeeping regulation was violated by the existence of the dust accumulation condition.

■ Bunge's contention, rather, is that the housekeeping regulation has been impermissibly expanded to include fire and explosion hazards instead of, for example, tripping and slipping hazards.[4] The type of hazard, however, is irrelevant to whether some condition or practice constitutes a violation of this regulation. Unless the general standard incorporates a hazard as a violative element, the proscribed condition or practice is all that the Secretary must show; hazard is presumed and is relevant only to whether the violation constitutes a "serious" one. *See, e. g., Central of Georgia R.R. Co. v. OSHRC*, 576 F.2d 620 (5th Cir. 1978); *Anning-Johnson Co. v. OSHRC*, 516 F.2d 1081 (7th Cir. 1975); *Lee Way Motor Freight, Inc. v. Secretary of Labor*, 511 F.2d 864, 869 (10th Cir. 1975). *Compare* 29 U.S. C.A. § 654(a)(1) (recognized *hazard* causing or likely to cause death or serious physical harm) *with id.* § 666(j) (violation serious if substantial probability that death or serious physical harm could result from a *condition, practice, or process*). Condition is what gives rise to a violation here. Therefore, the regulation was not impermissibly extended to cover fire and explosion hazards. The grain dust accumulations were properly

cited as an unclean condition in violation of the housekeeping regulation.

B. *The Seriousness of the Violation*

Whether the violative condition is serious depends on an application of 29 U.S.C.A. § 666(j), which provides that a violation is serious

> if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.

The first part of the statutory test is thus a calculation of the probable extent of physical injury should the accident occur. *See Shaw Construction Co., Inc. v. OSHRC*, 534 F.2d 1183, 1185 n.4 (5th Cir. 1976). *See also Usery v. Hermitage Concrete Pipe Co.*, 584 F.2d 127, 132 (6th Cir. 1978). Therefore, the seriousness of the violation depends on the hazard produced by the condition, subject to the second part of the statutory test—the negligence-type limitation of employer lack of actual or constructive knowledge.

■ The ALJ found that the dust accumulations could contribute to an explosion likely to kill or seriously injure employees, and that because the dust piles were in plain sight Bunge knew or should have known of the violation of the housekeeping regulation. There was substantial evidence to justify the ALJ's conclusion.[5]

---

4. Bunge does not contend that the housekeeping regulation is so vague that persons of common intelligence must necessarily guess at its meaning and, accordingly, violates due process by failing to fairly apprise an employer of the nature of its obligation and of the conduct prohibited. *See, e. g., McLean Truck Co. v. OSHRC*, 503 F.2d 8 (4th Cir. 1974) (due process challenge for vagueness of a regulation); *Ryder Truck Lines, Inc. v. Brennan*, 497 F.2d 230, 233-34 (5th Cir. 1974) (same). Rather, Bunge is merely contending that the regulation is itself inapplicable to the case at hand.

Nor would this Court need to pass on the constitutionality of the regulation even if Bunge argued it was impermissibly vague. Bunge had actual knowledge of the condition, and by virtue of the 1973 citation, Bunge knew of its obligation to clean the elevator. Actual notice would satisfy due process for application of the regulation to this case. This Court would thus not need to pass on whether this regulation is unconstitutionally vague on its face.

5. 29 U.S.C.A. § 660(a). *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *Ryder Truck Lines, Inc. v. Brennan*, 497 F.2d 230 (5th Cir. 1974).

## C. Other Arguments

Bunge also argues that the Secretary is required to prove that the explosion hazard actually existed and was or should have been a hazard recognized by the employer. This argument proceeds on the assumption that although this is technically a "section 5(a)(2)" case—failure to comply with OSHA standards promulgated under the Act—it should be treated instead like a "section 5(a)(1)" case—a violation of the "general duty clause" requirement to furnish each employee a place of employment free from recognized hazards that are causing or likely to cause death or serious physical harm to the employees. 29 U.S.C.A. § 654(a)(1) & (2).

■■■ Bunge's argument that this case should be treated as a section 5(a)(1) case rests on its earlier argument that the Secretary extended the housekeeping regulation to situations for which it was never intended. This Court again rejects the theory that the housekeeping regulation can include only tripping and slipping but not fire and explosion hazards. In a section 5(a)(1) case the Secretary must show, among other things, the existence of the hazard, recognition of the hazard by the employer or the industry in general, and worker exposure to the hazard. *Getty Oil Co. v. OSHRC*, 530 F.2d 1143 (5th Cir. 1976); *Brennan v. OSHRC*, 494 F.2d 460 (8th Cir. 1974); *National Realty Construction Co. v. OSHRC*, 489 F.2d 1257 (D.C.Cir.1973). When the standard incorporates hazard as an element of the violation, then the Secretary must show hazard in addition to condition or practice—the standard keys the violation to hazard just like the general duty clause. The existence of a hazard is not always an element, however, of the Secretary's burden of proof for showing violation of an OSHA standard. When the violative element is only a condition, hazard is presumed, and the Secretary need only show the existence of the violative condition and worker exposure to the condition. *See, e. g., Central of Georgia R.R. Co. v. OSHRC*, 576 F.2d 620 (5th Cir. 1978); *Anning-Johnson Co. v. OSHRC*, 516 F.2d 1081 (7th Cir. 1975); *Lee Way Motor Freight, Inc. v. Secretary of Labor*, 511 F.2d 864, 869 (10th Cir. 1975).[6]

■■■ Bunge further argues that general regulations, because they are general, should, like the general duty clause, be subject to a requirement that the Secretary show the condition generates a recognized hazard. Bunge cites *B & B Insulation, Inc. v. OHSRC*, 583 F.2d 1364 (5th Cir. 1978), as support for treating this as a section 5(a)(1) case. In *B & B Insulation*, however, this Court was reviewing a due process vagueness challenge to a general regulation that required the "wearing of personal protec-

Bunge contends that the only evidence establishing the seriousness of the hazard is a letter from a professional engineer to the Secretary of Labor warning that manual housekeeping itself *can give rise to explosive levels of airborne dust*. Bunge also argues that this letter was introduced only for assessment of the penalty and therefore was improperly relied upon by the ALJ in concluding the dust accumulation posed a serious hazard to employees.

Sufficient other evidence exists, however, to support the conclusion concerning the seriousness of the violation, so any impermissible reliance on the letter is harmless error. This evidence consists of testimony by Bunge's expert witness and Bunge's general Destrehan superintendent. While the evidence did not show the existence of a present and immediate threat of an explosion, it did show that conditions existed that made an explosion possible. *See Shaw Construction Corp. v. OSHRC*, 534 F.2d at 1185 n.4. For example, it is uncontested that an explosion's pressure wave can jar dust loose from ledges and sills, adding second-ary explosions. The first explosion need not be a dust explosion. Therefore the hazard is a possibility, and could reasonably be found to be serious given the substantial probability of serious injury and death if fire and explosion do occur. *See id.*

6. Since hazard is presumed, an employer would rebut the Secretary's case by showing no hazard arises from the particular condition. As the discussion of this violation's seriousness shows, there is a hazard associated with this dust accumulation condition. Nor must the hazard be serious. The housekeeping regulation presumes the existence of any hazards associated with the proscribed condition or conditions. When a regulation makes hazard a violative element, the regulation can specify all hazards, not just serious ones. Conversely, a regulation can specify only serious hazards as part of the violative elements, just like the general duty clause limits the recognized hazards to serious ones.

tive equipment" when there is "an exposure to *hazardous* conditions" (emphasis added). Therefore, that regulation keyed its violative elements to general hazards similar to the general duty clause of section 5(a)(1). *See also Cape & Vineyard Division of New Bedford Gas & Edison Light Co. v. OSHRC*, 512 F.2d 1148, 1152 (1st Cir. 1975). In this case, however, the housekeeping regulation goes only to proscribed conditions and does not address hazards. *See Lee Way Motor Freight, Inc. v. Secretary of Labor*, 511 F.2d 864, 869 (10th Cir. 1975).

■ Finally, Bunge asserts that OSHA may not use general standards to address the problem of grain elevator dust accumulations and dust explosions, but instead may only address those problems by promulgating a specific rulemaking. It again relies on *B & B Insulation* to support its argument. In that case, however, this Court was concerned with a regulation that attempted to address a specific problem but provided only a general standard. To save the standard from due process infirmities, this Court applied a reasonable person standard to the hazard element, and then noted that a rulemaking is the appropriate route for encouraging a *higher standard* of safety performance from the industry *than customary industry practices* exhibit, rather than selective enforcement of general standards. *Cf. Bristol Steel & Iron Works v. OSHRC*, 601 F.2d 717, 722–23 (4th Cir. 1979) (refusing to limit the reasonable person test to industry custom and practice). OSHA is currently undertaking a rulemaking concerning grain elevator dust explosions and accumulations. While a specific rulemaking may be preferable, OSHA is by no means obligated to countenance dangerous conditions pending the promulgation of a regulation that specifically addresses one of the hazards that the condition generates.

III. *The Meaning of the Term "Repeatedly" in the Occupational Safety & Health Act*

Section 17(a), 29 U.S.C.A. § 666(a), provides:

Any employer who willfully or repeatedly violates the requirements of section 5 of the Act, any standard, rule or order promulgated pursuant to section 6 of this Act, . . . may be assessed a civil penalty of not more than $10,000 for each violation.

Section 17(a) provides the maximum penalty under the Act. Congress, unfortunately, did not define the term "repeatedly." While other Circuits and the Commission have addressed the meaning of that term, it is a question of first impression in this Circuit.

The Third Circuit in *Bethlehem Steel Corp. v. OSHRC*, 540 F.2d 157 (3d Cir. 1976), the first to construe "repeatedly," relied upon an analysis of the legislative history to arrive at a "flaunting conduct" test. In *Todd Shipyards Corp. v. Secretary of Labor (Todd I)*, 566 F.2d 1327 (9th Cir. 1977), the majority there declined to adopt the Third Circuit's interpretation, but also declined to address the question of what generally constitutes a repeated violation. The dissent, however, would have required deliberate or reckless disregard of the requirements of the Act. *Id.* at 1332–34.

In *George Hyman Construction Co. v. OSHRC*, 582 F.2d 834 (4th Cir. 1978), the Fourth Circuit rejected the Third Circuit's legislative history analysis and flaunting conduct test. The Fourth Circuit instead required that there only be a prior and factually similar infraction.[7] In *Todd Shipyards Corp. v. Secretary of Labor (Todd II)*, 586 F.2d 683, 685–87 (9th Cir. 1978), the Ninth Circuit reaffirmed its rejection of the Third Circuit test of flaunting conduct. It agreed with the Fourth Circuit that the Third Circuit, in derogation of the disjunctive "or" in section 17(a), equates repeated and willful violations. *Todd II* held that because the two violations involved the same facility, a similar hazard, and a similar condition, the second violation could be

---

7. The Court additionally required that the employer have notice of the prior violation and have a reasonable time to comply with the citation. This would prevent inadvertent recurrence of the infraction from becoming a basis for a repeated violation. 582 F.2d at 841.

characterized as repeated, though the Ninth Circuit, as with the Fourth Circuit, declined to be more specific and pronounce a general interpretation of the term "repeatedly."

In *Potlatch Corp.*, 7 O.S.H.C. 1061, 3 Empl. Saf. & Health Guide (CCH) ¶ 23,294 (January 22, 1979), a Commission majority finally construed "repeatedly." It held that a violation was repeated if, "at the time of the alleged repeated violation, there was a Commission final order against the same employer for a substantially similar violation." It then allocated the burden of proof. The Secretary, in making out a section 5(a)(2) prima facie case of similarity, must show that the prior and present citations are for failure to comply with the same standard. The employer may then rebut a prima facie case involving the same general standard with "evidence of the [dissimilarity of the] conditions and hazards associated with these violations of the same standard." If the violations are of the same specific standard, rebuttal may be difficult since the two violations almost have to be substantially similar in nature in order to constitute violations of the specific standard.

The majority further held that a repeated violation may be based on a prior violation of a different standard or of the general duty clause if the Secretary showed the similarity of the conditions and hazards cited on the past and present violations. Factors such as the employer's attitude, the geographical proximity of and time lapse between the violations, the number of prior violations, and the commonality of supervision were declared irrelevant, however, to the substantial similarity of the past and present violations, though relevant on the employer's good faith and therefore on the assessment of the penalty.[8] The dissenting Commissioner would have required that the Secretary prove the substantial similarity of the conditions and hazards as part of the prima facie case, and would require that any good faith steps to prevent occurrence of the substantially similar violations be taken into account.

The *Potlatch* decision was handed down by the Commission four days before the decision in this case. The ALJ here held that the "re-occurrence of violations of the cited standard at Destrehan on three separate occasions during the span of five years should have demonstrated that the methods used by [Bunge] to keep the elevator free of dust and debris required improvement . . . ." It was on this basis that the ALJ held the violations to be repeated.

 The three citations involved the same standard, but only the first and last involved the same condition—dust accumulation. *Potlatch* did not address a section 5(a)(2) case involving a standard that proscribes condition but not hazard. Although this Court generally agrees with *Potlatch*, that decision does not strictly apply here. This Court holds that when the same standard is violated more than once, it is a repeated violation if there is substantial similarity of violative elements. In this case condition is the violative element, therefore the violation is repeated if the conditions are substantially similar. Here the dust accumulation condition of the 1973 and 1978 citations under the housekeeping regulation satisfy this test.[9]

8. The Commission in *Potlatch* found a repeated violation where the two violations involved the same standard—requiring visible identification markings on electrical equipment—but involved two entirely different kinds of equipment. It reversed the ALJ decision and faulted the Secretary for not proving the substantial similarity of the hazard.

9. When the violative elements are both condition and hazard, the citations must have both substantially similar conditions and substantially similar hazards. This is plainly the rule in *Potlatch*. The difficult issue, which this

Court leaves to another day, is how to judge citations under different standards when the violative elements of condition and hazard for each are not symmetrical. For example, the first citation could require both condition and hazard while the second could require only condition. Many possibilities arise when one considers the various combinations of the general duty clause itself, specific standards, general standards keyed only to condition, and general standards keyed to both condition and hazard. Rather than try to resolve any difficulties now, this Court leaves this problem to future cases. It is worth noting, however, that

This Court disagrees, however, with the Commission's allocation of the burden of proof in *Potlatch*. Under 5 U.S.C.A. § 556(d), the proponent of a rule or order has the burden of proof, except as otherwise provided by statute. Absent a different allocation of the burden of persuasion by the substantive statute, both the burden of production and persuasion remain with the Secretary. *Hercules, Inc. v. EPA*, 598 F.2d 91, 107 n.26 (D.C.Cir.1978). The Secretary must therefore show, in the context of a case like this, the substantial similarity of the conditions associated with the past and present violations of the same standard. *See B & B Insulation*, 583 F.2d at 1372 (Secretary has burden of proving all elements of a violation); 29 C.F.R. § 2200.73(a) (placing on Secretary burden of proof in proceedings commenced, as here, by the filing of a notice of contest). The employer in a case like this would then have the burden of disproving the substantial similarity of the conditions, or proving any affirmative defenses such as impossibility of complying with the prior citation,[10] lack of notice of the prior violation,[11] or lack of a reasonable time to comply with the prior citation.[12]

As to whether the ALJ properly found the violations below to be repeated violations, it is unclear what standard the ALJ used. It is unnecessary to remand this decision to the Commission, however, because the Secretary showed that the dust accumu-

lation condition was the basis of the 1973 and 1978 citations.[13] Under the standard this Court announces today the Bunge violation on review is a repeated violation.

For the aforementioned reasons, this Court affirms the Commission decision.

AFFIRMED.

---

in judging whether a test for repeated violation is within the Act, it should be kept in mind that § 17(a) prohibits repeated *violations*. Therefore the violative elements are crucial to an analysis of any test.

This Court notes that the Ninth Circuit would require prior and present violations be limited to the same facility. *Todd II*, 586 F.2d at 687. Because the prior and present violations here occurred at the same facility, it is unnecessary for this Court to pass on the wisdom of *Potlatch*'s contrary statement on this issue.

10. *See, e. g., Southern Colorado Prestress Co. v. OSHRC*, 586 F.2d 1342, 1351 (10th Cir. 1978).

11. *George Hyman*, 582 F.2d at 841.

12. *Id.*

13. The 1973 citation gave adequate notice of the prior violation, and Bunge had more than a reasonable time to comply with that citation.

Bunge intimates that compliance with the 1978 citation is impossible. This affirmative defense, however, was not raised below. If compliance is actually impossible, Bunge can always apply for a § 665 variance or defend against an enforcement proceeding on this basis. Bunge also suggests that it is the Commission's role to instruct Bunge on how to eliminate the grain dust. Bunge, however, is currently developing improvements to and redesigning its dust control system, therefore, it is better that Bunge retain the flexibility to design its abatement program. Furthermore, the pending rulemaking may provide further guidance on how compliance is to be achieved, and adherence to the forthcoming guidelines would seem to be sufficient to constitute compliance with the citations.