**CON AGRA, INC., Petitioner,**

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and Raymond J. Donovan, Secretary of Labor, Respondents.**

No. 81–1864.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 10, 1982.

Decided March 18, 1982.

Dean G. Kratz, McGrath, North, O'Malley & Kratz, P. C., Omaha, Neb., for Con Agra, Inc.

T. Timothy Ryan, Jr., Sol. of Labor, Frank A. White, Associate Sol. for Occupational Safety and Health, Dennis K. Kade, Associate Counsel for Appellate Litigation, Robert W. Swain, Atty., U. S. Dept. of Labor, Bobbye D. Spears, Regional Sol., Washington, D. C., for the Secretary of Labor.

Before HEANEY and ARNOLD, Circuit Judges, and OVERTON,* District Judge.

OVERTON, District Judge.

This is an appeal from a final order of the Occupational Safety and Health Review Commission (OSHRC). The Commission denied review of an administrative law judge's citation of the petitioner, Con Agra, Inc., for one violation of the Occupational Safety and Health Administration's housekeeping standards and several violations of the National Electrical Code, which has been incorporated in the agency's standards. The only issue on appeal is whether the decision below is supported by substantial evidence.

The underlying facts may be briefly summarized. Con Agra, Inc. operates a facility in Jacksonville, Florida, where it produces various animal feed mixes from grains and other commodities.[1] From June 26, through June 30, 1980, the Secretary of Labor conducted an investigation of Con Agra's worksite and subsequently issued one serious citation and one other citation charging the company with violations of the Occupational Safety and Health Act, 29 U.S.C. § 651 *et seq.*

Operations at the Jacksonville facility include crushing, grinding, mixing and transferring several grains, primarily corn. The plant's products generally consisted of 50% to 60% grain. Included in the facility are three rooms or areas designated as houses three, four and five. The administrative law judge's decision and order reveals that house three contains offices and an area used for bagging feed. House four is a storage area for grains and other ingredients and contains certain operating equipment used in the production of feed. House five is a storage area containing storage bins for grains and a pile of cottonseed hulls. Attached to this house is a railroad dock used for shipping and receiving feed and grains.

The violations which are here at issue may be conveniently grouped into three categories, all of which are challenged by Con Agra on substantial evidence grounds. First, Con Agra is charged with a violation of the OSHA housekeeping standard contained in 29 C.F.R. § 1910.22(a)(1) for failure to keep its place of employment "clean and orderly and in sanitary condition." Second is the question whether the indoor locations in question constituted Class II, Division 2 locations within the meaning of the NEC so as to support a violation by the existence of a number of non-approved electrical switches and receptacles. Third is the question whether the loading dock constituted a Class III, Division 2 location so as to support a violation by the use of non-conforming electrical equipment, specifically an electrically powered Bobcat front-end loader.

The administrative law judge's prefatory observations about the Con Agra facility are helpful to an understanding of the case:

---

* The Honorable William R. Overton, District Judge, United States District Court for the Eastern District of Arkansas, sitting by designation.

1. Con Agra has its principal place of business in Omaha, Nebraska, and accordingly this Court has jurisdiction pursuant to 29 U.S.C. § 660(a).

The operations conducted ... in connection with the receiving and storing of grain (primarily corn), the crushing and grinding of grain and the moving of grain and feed within the facility create a significant amount of grain dust which collects on the floors and walls of the facility, on equipment, and on any objects within the facility having surfaces to which dust can cling. [Con Agra] does not contest this fact ... and the accumulation of dust within the facility is clearly revealed by many of the photographs contained in complainant's exhibit one.

The Occupational Safety and Health Review Act provides that the Commission's findings of fact shall be conclusive "if supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 660(a). "Substantial evidence has a long-standing interpretation by the Supreme Court. It 'is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' [citation omitted] Accordingly, it 'must do more than create a suspicion of the existence of the fact to be established.... it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.'" *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951), quoting *Labor Board v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 368. In reviewing the Commission's factual findings, § 660(a) requires this Court to consider not only the evidence supporting the administrative law judge's findings, but also the evidence offered by Con Agra in opposition.

In the case at bar, the administrative law judge's factual findings essentially rest on his determination as to the credibility of two expert witnesses. The Secretary's investigator, Mr. Hight, had conducted over 1000 inspections under the Act, including more than fifty inspections of feed mills and grain elevators. He showed considerable expertise on the subject of grain dust. He estimated that dust produced by Con Agra's operations consisted of 50%–60% grain dust and was therefore combustible. In opposition to this was the testimony of Con Agra's safety director, Mr. Bellinger, who testified that material which he found in an electrical outlet which was a subject of the citation consisted primarily of insect shells, insect larva, atmospheric dust and cobwebs. He stated that the material would not flame when burned with a butane lighter. The administrative law judge found Mr. Bellinger's testimony "somewhat incredible". The administrative law judge further observed, "Bellinger's testimony to the effect that he has tested over 60 different dusts and grains and found none of them sustain combustion (Tr. 353) casts considerable doubt on the objectivity of the test he conducted in the instant case," given the well documented explosive propensities of grain dust. This Court is in no position to reverse findings as to the credibility of either expert witness.

■ Apart from the citation for violation of the OSHA housekeeping standard, this appeal turns on whether the administrative law judge properly found the electrical receptacles and switches inside the facility were located within a NEC Class II, Division 2 area [2] and whether the conduit, control switch, light bulb and receptacle in the loading dock area were properly found to be in a Class III, Division 2 area. Con Agra virtually concedes that if the classifications were proper, then the electrical items in question were of a type not approved for

2. The NEC was prepared by the National Fire Protection Association and selected provisions have been adopted as mandatory OSHA requirements pursuant to § 6(a) of the OSH Act, 29 U.S.C. § 655(a). The NEC provisions relevant to this citation require, in sum, that specialized safety wiring and equipment be used in workplaces where an increased risk of fire or explosion exists.

NEC Article 500 classifies industrial locations according to the nature of the flammable or explosive material typically found there. A Class II environment is one where combustible dust is present, NEC § 500–5(a); (b); a Class III environment is hazardous because of the presence of ignitable fibers, NEC § 500–6(a), (b).

use in these areas. Petitioner's Brief at 4.[3] As previously indicated, this determination was based largely on the administrative law judge's evaluation of the expert testimony. We find that the decision as to both the Class II, Division 2 areas and Class III, Division 2 areas is supported by substantial evidence.

 Of the remaining arguments raised by Con Agra, only one merits discussion. In connection with the violation of the OSHA housekeeping standard, Citation 1, Item 1, there is the suggestion in the petitioner's brief that this regulation[4] is aimed strictly at tripping and falling hazards and therefore has no application to the accumulation of grain dust on floors. The administrative law judge opined that the housekeeping standard was not so limited, but went on to say, "The record is not void of evidence that the accumulation of dust from one-half to three inches in depth would, in fact, create a slipping or falling hazard." Decision and Order, 3. We agree that the housekeeping standard is not limited to tripping and falling hazards but may be applied to the significant accumulation of combustible dust as was shown in this case. *Bunge Corp. v. Secretary of Labor*, 638 F.2d 831, 834 (5th Cir. 1981). Moreover, substantial evidence supports the finding that the standard was violated. Likewise, there is evidence that the violation was properly termed serious because the accumulations of grain dust could contribute to a fire or explosion, and because Con Agra clearly had knowledge of the problem. The order of the Commission is, therefore,

Affirmed.

---

**3.** Even if we misinterpret Con Agra's position on this point, there is substantial evidence that all of the receptacles and fixtures were not of a type approved for use in the respective areas.

**4.** The regulation appears at 29 C.F.R. § 1910.-22(a)(1): "(a) housekeeping. (1) all places of employment, passageways, storerooms and service rooms shall be kept clean and orderly and in a sanitary condition."