J. L. FOTI CONSTRUCTION COMPANY, Petitioner,

v.

OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION; and Raymond J. Donovan, Secretary of Labor, Respondents.

No. 80–3806.

United States Court of Appeals, Sixth Circuit.

Argued April 20, 1982.

Decided Sept. 7, 1982.

Andrea Kanter Rubin, Weiner, Orkin, Abbate & Suit Company, L.P.A., Louis H. Orkin, Beachwood, Ohio, for petitioner.

Domenique Kirchner, U. S. Dept. of Labor, Anthony J. Steinmeyer, Al J. Daniel, Jr., Dept. of Justice, Washington, D. C., for respondents.

Before ENGEL and MARTIN, Circuit Judges, and ENSLEN, District Judge.*

* Honorable Richard A. Enslen, District Judge, United States District Judge for the Western District of Michigan, sitting by designation.

1. 29 C.F.R. § 1926.451(d)(10), on which Foti's August 9, 1977 citation was based, provides:

Guardrails made of lumber, not less than 2 × 4 inches (or other material providing equivalent protection), and approximately 42 inches high, with a mid-rail of 1 × 6 inch lumber (or other material providing equivalent protection), and toeboards, shall be installed at all open sides and ends on scaffolds more than 10 feet above the ground or floor. Toeboards shall be minimum of 4 inches in height.

BOYCE F. MARTIN, Jr., Circuit Judge.

This case is before us pursuant to section 11(a) of the Occupational Safety and Health Act of 1970, 29 U.S.C. § 660. Petitioner J. L. Foti Construction Company seeks review of an order issued against it by the Occupational Safety and Health Review Commission.

Foti is a masonry contractor with about twenty-six employees. In 1977, Foti was engaged in replacing the facing stone of the Ohio Bell Telephone Building in Cleveland, Ohio. This job necessitated construction of a 112-foot scaffold with working tiers at six-foot intervals. Along the sides of the working tiers Foti placed diagonal crossbraces; he did not, however, install "guardrails" which conformed to specifications set out at 29 C.F.R. § 1926.451(d)(10). Those specifications require guardrails to have a uniform height of 42 inches and to include a "midrail." Foti also erected a nylon mesh net, used to catch falling materials, on at least one side of the scaffold.

On July 28, 1977, a Department of Labor compliance officer observed and photographed Foti's scaffold. On August 9, 1977, the Secretary issued a citation charging Foti with "repeated" violation of 29 C.F.R. § 654(a)(2) and 29 C.F.R. § 1926.451(d)(10).[1] The substance of the charge was failure to guard the scaffold with a standard railing. The Secretary based the allegation of "repeated" violations upon Foti's receipt, in 1975, of a citation for violating 29 C.F.R. § 1926.451(a)(4), which also relates to scaffold guardrails.[2] Under section 17(a) of the

Wire mesh shall be installed in accordance with paragraph (a)(6) of this section.

2. Foti's 1975 citation was based on 29 C.F.R. § 1926.451(a)(4), which provides:

Guardrails and toeboards shall be installed on all open sides and ends of platforms more than ten (10) feet above the ground or floor, except needle beam scaffolds and floats (see paragraphs [p] and [w] of this section). Scaffolds four (4) feet to ten (10) feet in height, having a minimum horizontal dimension in either direction of less than 45 inches, shall have standard guardrails installed on all open sides and ends of the platform.

Act, "repeated" violations are subject to enhanced penalties.[3]

In January, 1978, an administrative hearing was held on the August 9 citation. Foti vigorously contested the Secretary's allegations. He challenged the Compliance Officer's version of the "facts" and argued that the crossbraces and nylon netting provided protection "equivalent" to that of a guardrail.

The administrative law judge resolved the conflict in the evidence in the Secretary's favor and found that Foti had violated 29 C.F.R. § 1926.451(d)(10). He rejected Foti's "equivalent protection" argument on two grounds: first, he found that the nylon net, which, if properly installed, would have been an adequate substitute for a guardrail, was not in place along all the open sides of the scaffold; second, he determined that crossbraces alone are not equivalent to guardrails for purposes of fall prevention, inasmuch as crossbraces lack the requisite "midrail" and do not have a uniform height.

The administrative law judge also held that Foti was not guilty of section 17(a) "repeated violations" because the 1975 and 1977 citations were based on "different standards." He assessed a civil penalty of $500.

The Commission granted discretionary review, and on June 30, 1980, vacated the administrative law judge's ruling. It remanded the case for reconsideration in light of its intervening decisions in *Dick Corp.*, 1979 CCH OSHD ¶ 24,078 (Rev.Comm'n 1979) and *Potlatch Corp.*, 1979 CCH OSHD ¶ 23,294 (Rev.Comm'n 1979); 7 OSHD 1061.

*Dick* explicitly held that cross-braces alone are not "substantially equivalent" to guardrails. That decision merely reinforced the administrative law judge's earlier finding and confirmed a distinction which was apparent on the face of the Regulations.

*Potlatch*, on the other hand, represented a significant departure from the Commission's previous position. In that case, for the first time, Commission members reached a consensus on the definition of a "repeated violation." Theretofore, each member had espoused a different approach to this question. In *Potlatch*, the Commission held that a violation is "repeated" if, at the time of the alleged repeat violation, there is a Commission final order against the employer for a "substantially similar violation."

On remand, the administrative law judge reaffirmed his rejection of Foti's "equivalent protection" theory on the basis of *Dick, supra.* However, he concluded that *Potlatch* required him to reverse his previous ruling on the "repeated violation" question. Accordingly, he found that Foti had committed "repeated" violations and raised the penalty from $500 to $900.

On review, we must decide: (1) whether the administrative law judge erred in finding that Foti violated 29 C.F.R. § 1926.-451(d)(10); (2) whether *Potlatch* is a permissible interpretation of section 17(a) of the Act; and (3) whether the Commission abused its discretion in applying *Potlatch* retroactively to this appellant.

■ With respect to the first issue, we uphold both the factual and legal bases for the administrative law judge's conclusion that Foti violated 29 C.F.R. § 1926.-451(d)(10). Our review of his findings of fact is limited by the "substantial evidence" standard. If there is warrant in the record for the result below, that result must stand, even if we might have interpreted the evidence differently in a trial *de novo*. *Dunlop v. Rockwell International*, 540 F.2d 1283, 1287 (6th Cir. 1976); *Empire-Detroit Steel v. OSHRC*, 579 F.2d 378, 383 (6th Cir. 1978). As trier of fact, the administrative law judge was entitled to credit the Secretary's evidence over Foti's testimony concerning the presence of Foti employes on the scaffold and the use of safety nets on the open sides of the working tiers.

---

**3.** Section 17(a), 29 U.S.C. 666(a), provides:

Any employer who willfully or repeatedly violates the requirements of Section 5 of the Act, any standard, rule or order promulgated pursuant to Section 6 of this Act, ... may be assessed a civil penalty of not more than $10,000 for each violation.

Neither can we find fault with the administrative law judge's legal determination that cross-braces alone are not "substantially equivalent" to guardrails. Whatever the "industry practices" relied on by Foti may have been, the Regulations explicitly require that safety devices installed to prevent falls offer workers the same degree of protection as a standard guardrail of uniform height. Common sense teaches that diagonal cross-braces alone, which leave substantial gaps through which an employee might easily fall, do not pass muster under this standard.

We turn now to consider the meaning of the phrase "repeated violations" for purposes of section 17(a). Although our disposition of this appeal obviates any present need for a definitive interpretation of that language, the question is one of first impression in this circuit and warrants at least an indication of the position we will take in future cases.

Foti asks us to adopt the threshold standard for "repeated violations" articulated in *Bethlehem Steel Corp. v. OSHRC*, 540 F.2d 157 (3d Cir. 1976). In that case, the Third Circuit held that an employer commits "repeated violations" only if it "flaunts" the Act by repetitive and conscious disregard of the Act's requirements. *Id.* at 162. Under *Bethlehem Steel*, the second occurrence of an infraction can never be characterized as a "repeated" violation. *Id.* at n.11.

If we were to accept the Third Circuit's analysis, we would effectively overrule *Potlatch* in this circuit. However, we have reviewed the case law construing section 17(a) and conclude that the "flaunting" standard of *Bethlehem Steel* is too restrictive. In our opinion, the Review Commission and four other circuit courts have adopted the better view.

■ In *George Hyman Construction Co. v. OSHRC*, 582 F.2d 834, 840–41 (4th Cir. 1978), the Fourth Circuit noted that both the disjunctive wording of the statute and its legislative history indicate that Congress did *not* intend for the words "repeatedly" and "willfully" to be read as a single standard:

The legislative history of the Occupational Safety & Health Act, although meager, suggests that willful violation citations and repeated violation citations were designed to reach different problems. The provision for repeated violations was added to the House version of § 17(a) of the Act, 29 U.S.C. § 666(a), after several earlier drafts had included enhanced penalties only for willful violations. *Compare* H.R. 16785, 91st Cong., 2d Sess. 67–68 (1970), *reprinted in* Legislative History at 959–60 *with* Legislative History at 1103. We believe the most reasonable inference to be drawn from the subsequent addition of "repeatedly" is that Congress intended to provide for enhanced penalties when an employer committed recurrent violations that did not necessarily rise to the level of willfulness.

This is the interpretation to which the Commission adheres. Similarly, the Fifth, Ninth, and Tenth Circuits have declined to draw an inference of "willfulness" from the word "repeatedly." *Bunge Corp. v. Secretary of Labor*, 638 F.2d 831 (5th Cir. 1981); *Todd Shipyards v. Secretary*, 586 F.2d 683 (9th Cir. 1978); *Kent Nowlin Construction Co. v. OSHRC*, 648 F.2d 1278 (10th Cir. 1981). We agree with the majority position that for purposes of section 17(a), "repeatedly" means, simply, "occurring more than once." The presence or absence of the additional element of "willfulness" on the part of the employer remains an independent issue.

The inquiry cannot end here, however, for neither the courts nor the *Potlatch* commission limit the concept of "repeated violations" to factually identical occurrences. Where the *same regulatory standard* is involved, the authorities appear to agree that "repeated" violations are "substantially similar" violations. *See Potlatch*, 7 OSHD at 163–4; *George Hyman Construction Co.*, 582 F.2d at 841–2; *Todd Shipyards*, 586 F.2d at 687; *Kent Nowlin Construction Co.*, 648 F.2d at 1279; *Bunge Corp.*, 638 F.2d at 837. "Substantial similarity", in turn, is determined with reference to the similarity

of the "violative elements" of the infractions. *Bunge Corp.*, 638 F.2d at 837. Under *Potlatch*, circumstances such as the geographical proximity of the violations, the commonality of supervisory control over the violative condition, and the time lapse between the violations bear only on the size of the penalty to be assessed, not on the "repeated" character of the infractions. 7 OSHC at 1064.

In *Potlatch*, however, the Review Commission did not stop at the generally accepted principles summarized above. Instead, it went on to hold that "substantially similar" violations of *different* standards may *also* be "repeated violations" if the different standards are addressed to *similar hazards.* The Commission offered the following example of a "repeated violation" involving different regulatory provisions:

> [I]f two employees performing construction work such as painting were exposed to a 20 foot fall from an unguarded scaffold, the employer would be in violation of 29 C.F.R. § 1926.451(a)(4); a subsequent citation based on exposure to the same employees to a 20 foot fall while using the same unguarded scaffold to replace light bulbs would be a violation of 29 C.F.R. § 1910.28(a)(3).

7 OSHC at 1063.

The present case, of course, involved violations of 29 C.F.R. § 1926.451(a)(4) and 29 C.F.R. § 1926.451(d)(10), both of which concern the construction of scaffold guardrails to prevent employee falls. On remand, the administrative law judge found that these violations were "repeated" within the meaning of *Potlatch* because both standards addressed the hazard of employee falls from a scaffold.

We believe that *Potlatch*, both generally and in its application to the particular facts of this case, represents a reasonable interpretation of the Regulations and section ·666(a) of the Act.[4] In so holding, we acknowledge that the Review Commission is vested with broad discretion in carrying out its enforcement function. *See George Hyman Construction Co.*, 582 F.2d at 842. We need not, in the context of this controversy, define the precise parameters of the "similar hazards" concept propounded in *Potlatch.* We do, however, emphasize for future reference that the application of this concept to specific cases must be limited by the "adequate notice" considerations set out in *George Hyman Construction Co., supra* at 841.

We turn now to the final issue in this case—the retroactive application of *Potlatch* to this appellant. The Secretary cites the Supreme Court's discussion of retroactivity in *Chevron Oil v. Huson*, 404 U.S. 97, 106–107, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971), for the proposition that Foti is not entitled to relief on that theory. In that case, the Court stated:

> In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, see, e.g., *Hanover Shoe v. United Shoe Machinery Corp.*, supra, [392 U.S. 481] at 496, [88 S.Ct. 2224, at 2233, 20 L.Ed.2d 1231] or by deciding an issue of first impression whose resolution was not clearly foreshadowed, see, e.g., *Allen v. State Board of Elections*, supra, [393 U.S. 544] at 572 [89 S.Ct. 817, at 835, 22 L.Ed.2d 1]. Second, it has been stressed that "we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." *Linkletter v. Walker*, supra, [381 U.S. 618] at 629 [85 S.Ct. 1731, at 1738, 14 L.Ed.2d 601]. Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied ret-

---

4. In *Bunge Corp.*, 638 F.2d at 837, the Fifth Circuit expressed general approval of the *Potlatch* decision, but took issue with the manner in which the Commission allocated the burden of proof. We reserve judgment on that specific question for a more appropriate case.

roactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." *Cipriano v. City of Houma*, supra, [395 U.S. 701] at 706 [89 S.Ct. 1897, at 1900, 23 L.Ed.2d 647].

404 U.S. at 106–107, 92 S.Ct. at 355.

*Chevron Oil* relates to the retroactive application of noncriminal judicial decisions. A similar standard obtains when an administrative agency adopts a new rule in the course of an adjudication proceeding. In the latter event, "the courts analyze whether the inequity of retroactive applications is counterbalanced by sufficiently significant statutory interests." *E. L. Weigand Div. v. NLRB*, 650 F.2d 463, 471 (3d Cir. 1981). *See also SEC v. Chenery Corp.*, 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947); *Lodges 743 and 1746 v. United Aircraft*, 534 F.2d 422, 452–53 (2d Cir. 1975); *Retail, Wholesale and Dept. Store Union v. NLRB*, 466 F.2d 380, 390 (D.C.Cir.1972); [5] *NLRB v. Majestic Weaving Co.*, 355 F.2d 854, 860–61 (2d Cir. 1966).

When we apply these various judicial pronouncements on retroactivity to the present case, we find that the equities fall in favor of appellant Foti. It is true, as the Secretary points out, that *Potlatch* neither "overruled clear past precedent" nor presented the issue of "repeated violations" to the Review Commission for the first time. *Potlatch* was, however, the first case in which a majority of the Commission was able to reach *any* consensus on the meaning of the phrase "repeated violations." Theretofore, the Commission's treatment of this issue had generated little more than hopeless confusion. Chairman Cleary acknowledged this previous uncertainty in his *Potlatch* opinion:

> The question of what constitutes a repeated violation has come before the

Commission and the courts on a number of occasions. Although several plausible suggestions have been made by individual Commissioners and the courts, no consistent and authoritative answer has emerged. See the various administrative and judicial opinions in *George Hyman Construction Co.*, 77 OSA–HRC 67/C7, 5 BNA OSHC 1318, 1977–78 CCH OSHD ¶ 21,774 (No. 13559, 1977), *aff'd*, 582 F.2d 834 (4th Cir., 1978); and *Todd Shipyards Corp. v. Secretary of Labor*, 566 F.2d 1327, 1332 n.1 [6 OSHC 1227] (9th Cir. 1977) (dissenting opinion) (synopsis of major decisions). Inasmuch as the announcement of authoritative guidelines is an important matter, we have thoroughly re-examined this issue in light of the decisions of the Fourth and Ninth Circuits, and we now announce the following principles.

7 OSHC at 1062–63.

Thus, as the Commission itself concedes, resolution of the "repeated violations" question was not "clearly foreshadowed" by pre-*Potlatch* Commission decisions. Neither do the Fourth and Ninth Circuit cases, alluded to in the foregoing quotation, constitute such a "clear foreshadowing." As we observed earlier, those decisions do not address the question of "repeated violations" in the present context of different regulatory standards.

■ Our strongest objection to this particular instance of retroactivity is the fact that Foti was thereby subjected to an almost doubled fine. Before *Potlatch*, the appellant had absolutely no basis for suspecting that citations issued under *different* regulatory provisions could expose him to section 17(a)'s greatly enhanced penalty for "repeated violations." This strikes us as fundamentally unfair.[6] In our view, pro-

---

**5.** In *Retail, Wholesale and Dept. Store Union*, 466 F.2d at 390, the court further refined the retroactivity inquiry:

> (1) whether the particular case is one of first impression, (2) whether the new rule represents an abrupt departure from well established practice or merely attempts to fill a void in an unsettled area of the law, (3) the

extent to which the party against whom the rule is applied relied on the former rule, (4) the degree of the burden which a retroactive order imposes on a party, and (5) the statutory interest in applying a new rule despite reliance of a party on the old standard.

**6.** But *cf.* the Second Circuit's suggestion in *Majestic Weaving*, 355 F.2d at 860, that retro-

spective-only application of that portion of *Potlatch* which announces the new "different standards-similar hazards" rule will adequately effectuate the purposes of the Act.

We are aware that our disposition of the retroactivity issue is, perhaps, outside the mainstream of published authority. In this regard, we emphasize that our decision should not be construed as an expansion of generally accepted principles of retroactivity. On the contrary, the result we reach springs from the particular circumstances of this controversy and is thereby limited in its effect.

The judgment below is affirmed in part and reversed in part. The case is remanded for reinstatement of the original civil penalty assessed by the administrative law judge against appellant Foti.

active application of a new rule which results only in an enhanced, rather than an initial, financial penalty, is acceptable.