**D & S GRADING COMPANY, INC., Petitioner,**

v.

**SECRETARY OF LABOR, Respondent.**

No. 89–8396.

United States Court of Appeals, Eleventh Circuit.

April 30, 1990.

Rehearing Denied June 5, 1990.

Glenville Haldi, Atlanta, Ga., for petitioner.

Daniel J. Mick, Bobbye D. Spears, Regional Sol., U.S. Dept. of Labor, Office of the Sol., Atlanta, Ga., Barbara A.W. McConnell, Office of the Sol., OSH Div., U.S. Dept. of Labor, Ann Rosenthal, Washington, D.C., for respondent.

Before CLARK, Circuit Judge, RONEY *, Senior Circuit Judge, and ATKINS **, Senior District Judge.

RONEY, Senior Circuit Judge:

The Occupational Safety and Health Review Commission (OSHRC) assessed penalties totalling $51,000 against D & S Grading Company based on its having committed six safety violations in a pipelaying operation. Finding five of the violations to have been "repeated" and the other "serious," the administrative law judge (ALJ) set the maximum penalty as to each. The

---

\* See Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

\*\* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

ALJ's decision became a final order of the Commission by operation of law when no individual Commission member directed review in response to D & S' petition for discretionary review. 29 C.F.R. § 2200.90(d); 29 U.S.C.A. § 661(j). D & S argues on appeal that there were erroneous findings of fact and that the penalties imposed were excessive. We affirm.

D & S employees were laying an underground pipe for a Marietta, Georgia office park when the walls of the pipe trench collapsed, trapping two workers. One worker was buried up to his hips; the other was buried over his head. It took rescuers more than six hours to free the first, and over ten hours to free the second.

The ALJ found D & S in violation of six OSHA regulations: failure to maintain a trench safety program (29 C.F.R. § 1926.20(b)(1)), failure to train employees in the recognition and avoidance of unsafe conditions (29 C.F.R. § 1926.21(b)(2)), failure to require employees to wear hard hats (29 C.F.R. § 1926.650(e)), failure to slope, shore or otherwise support walls of a trench dug in more than five feet of unstable soil (29 C.F.R. § 1926.652(b)), failure to keep spoil piles at least two feet away from the edge of the trench (29 C.F.R. § 1926.651(i)(1)), and failure to provide a ladder or other means of exit to employees working in a trench more than four feet deep (29 C.F.R. § 1926.652(h)).

■ Substantial evidence in the record supports the ALJ's findings that D & S committed each of these violations, so we must uphold the Commission's adoption of those findings. 29 U.S.C.A. § 660(a); *Daniel International v. OSHRC,* 683 F.2d 361, 363 (11th Cir.1982); *Cleveland Consolidated, Inc. v. OSHRC,* 649 F.2d 1160, 1167 (5th Cir.1981); *H.B. Zachry Co. v. OSHRC,* 638 F.2d 812, 815 (5th Cir.1981); *Turner Communications Corp. v. OSHRC,* 612 F.2d 941, 944 (5th Cir.1980); *Accu–Namics, Inc. v. OSHRC,* 515 F.2d 828, 834–35 (5th Cir.1975), *cert. denied,* 425 U.S. 903, 96 S.Ct. 1492, 47 L.Ed.2d 752 (1976).

The more perplexing issues are whether the violations were properly classified as "serious" and "repeated" and whether the

penalties were appropriate. A careful review of the record reveals that the ALJ was correct in making these decisions as well.

A "serious" violation can result in imposition of a penalty "up to $1,000." 29 U.S.C.A. § 666(b). Each "repeated" violation, however, could carry a penalty as high as $10,000. 29 U.S.C.A. § 666(a).

■ Failure to initiate and maintain OSHA–mandated safety programs (29 C.F.R. § 1926.20(b)(1)), the purpose of which is to avoid serious injury, was properly classified as a "serious" violation. There was certainly "a substantial probability that death or serious physical harm could result" from the failure to implement such safety programs. 29 U.S.C.A. § 666(k). The statutory definition of a *de minimis* violation, i.e., one having "no direct or immediate relationship to safety or health," does not apply. 29 U.S.C.A. § 658(a); *Turner Communications Corp. v. OSHRC,* 612 F.2d 941, 945 (5th Cir.1980). There was substantial evidence to justify the ALJ's conclusion on this point. *See Bunge Corp. v. Secretary of Labor,* 638 F.2d 831, 834 (5th Cir. Unit A March 1981).

■ This Court has held that a violation is "repeated" for purposes of 29 U.S.C.A. § 666(a) if (1) the same standard has been violated more than once and (2) there is a "substantial similarity of violative elements" between the current and prior violations. *Bunge Corp.,* 638 F.2d at 837; *accord J.L. Foti Constr. Co. v. OSHRC,* 687 F.2d 853, 856 (6th Cir.1982); *Dun–Par Engineered Form Co. v. Marshall,* 676 F.2d 1333, 1337 (10th Cir.1982); *George Hyman Constr. Co. v. OSHRC,* 582 F.2d 834, 839 (4th Cir.1978); *Todd Shipyards Corp. v. Secretary of Labor,* 566 F.2d 1327, 1330 n. 5 (9th Cir.1977). *Contra Bethlehem Steel Corp. v. OSHRC,* 540 F.2d 157, 162 (3rd Cir.1976) (violation is "repeated" only if it's occurred more than *twice* and in a manner that "flaunts the Act"). The prior citation on which the repeat violation is based must have become a final order of the Commission. Annotation, *When Has Employer "Repeatedly"*

*Violated Occupational Safety and Health Act Within Meaning of § 17(a) of Act (29 U.S.C.S. § 666(a)),* 41 A.L.R.Fed. 146, 150–51 (1979) (citing OSHRC decisions). The burden of showing the requisite substantial similarity of violative elements rests with the Secretary. *Bunge Corp.,* 638 F.2d at 838. Once substantial similarity is shown, the burden shifts to the employer to disprove substantial similarity or prove any affirmative defense it may have. *Id.*

■ In the instant case, D & S had twice before—in 1984 and 1985—been cited for violations of OSHA regulations. Both citations had resulted in final orders of the Commission finding D & S in violation. D & S argues that these citations cannot form the basis for classifying the instant violations as "repeated" because (1) the 1984 violations had been committed by a subcontractor and (2) the 1985 violations involved another type of operation.

Substantial evidence in the record supports the ALJ's finding of "substantial similarity of violative elements" with respect to the 1985 violations. *Bunge Corp.,* 638 F.2d at 837. The violative elements both in 1985 and in the instant case were in the nature of conditions and hazards increasing the vulnerability of trench workers to cave-ins. In both instances, there had been no shoring, sloping, or other support of trench walls, no hard hats, no safety training, no escape ladder, and improper placement of spoil piles. Since the 1985 violations would alone be sufficient to sustain the "repeated violations" finding, it is unnecessary to consider D & S' protestations of non-participation in those of 1984.

The ALJ's opinion thoroughly reviewed all of the evidence presented concerning the four penalty factors: (1) the size of the business of the employer being charged, (2) the gravity of the violation, (3) the good faith of the employer, and (4) the history of previous violations. 29 U.S.C.A. § 666(j). This Court reviews the ALJ's application of these considerations using an abuse of discretion standard. *Shaw Constr., Inc. v. OSHRC,* 534 F.2d 1183, 1185 (5th Cir.1976); *Dan J. Sheehan Co. v. OSHRC,* 520 F.2d 1036, 1041 (5th Cir.1975), *cert. denied,* 424 U.S. 965, 96 S.Ct. 1458, 47 L.Ed.2d 731 (1976); *REA Express, Inc. v. Brennan,* 495 F.2d 822, 827 (2nd Cir.1974).

■ With respect to the "history of prior violations" factor, the ALJ acted properly in considering both the 1984 and 1985 citations, notwithstanding D & S' contention that it was not directly responsible for the former. At a minimum, the 1984 citation put the company on notice that its safety precautions were inadequate. It also allowed D & S sufficient time to take corrective action, as the instant violations did not occur until some three years later. *Bunge Corp.,* 638 F.2d at 838 n. 13; *George Hyman Constr. Co.,* 582 F.2d at 841; *accord J.L. Foti Constr. Co.,* 687 F.2d at 857.

■ The ALJ's conclusion that maximum penalties were appropriate rested in large part on this assessment:

> D & S has, in the past, paid the rather nominal penalties and blithely continued to commit egregious violations in a most hazardous industry.... Standard operating procedure for D & S in the past has been to pay the penalty and ignore OSHA regulations until the next inspection. The stakes are too high to allow this company to operate in this manner. Perhaps payment of the maximum penalty will bring a new understanding to D & S of the vital importance of complying with OSHA regulations.

OSHRC opinion at 12–13. In view of the record as a whole, including the evidence concerning the number of fatalities sustained of late in metropolitan Atlanta trench collapses, we find no fault in the ALJ's conclusion that a greater compliance incentive was warranted here.

AFFIRMED.