BETHLEHEM STEEL CORPORATION, Petitioner,

v.

OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and Peter J. Brennan, Secretary of Labor, Respondents.

No. 75-2301.

United States Court of Appeals, Third Circuit.

Argued June 11, 1976.
Decided July 20, 1976.

Denis V. Brenan, and Joseph A. Torregrossa, Morgan, Lewis & Bockius, Philadelphia, Pa., for petitioner.

William J. Kilberg, Sol. of Labor, Benjamin W. Mintz, Associate Sol., Occupational Safety and Health, Washington, D. C., Michael H. Levin, Counsel, Appellate Litigation, Dennis K. Kade, Atty., U. S. Dept. of Labor, Washington, D. C., for Secretary of Labor.

Before VAN DUSEN, GIBBONS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This petition for review of an order of the Occupational Safety and Health Review Commission, dated September 17, 1975, and amended on September 22, 1975, requires us to interpret the meaning of § 17(a) of the Occupational Safety and Health Act, 29 U.S.C. § 666(a),[1] particularly the meaning of the word "repeatedly" in that section. Because we hold that the Commission applied a legally erroneous interpretation of § 666(a) in this case,[2] we grant the petition for review and modify the order of the Commission.

## I.  THE FACTS

The facts are undisputed.[3] Bethlehem has many facilities throughout the country, employing thousands of persons.  One of its facilities is a shipyard, called the "San Pedro Yard," located at Terminal Island, California.  At the San Pedro Yard, a wide variety of ship repair and maintenance work is performed.  Harbor craft and ocean vessels of all types are continuously brought into the Yard, and after the requested repair and maintenance work is performed, the ships are returned to their owners.

On February 19, 1974, a Compliance Safety & Health Officer conducted an inspection of the U.S.S. Navasota (a Navy oil tanker), which was at the San Pedro Yard for repairs.  The Officer found that Bethlehem had permitted a bilge pump and the attached air hoses to obstruct a passageway which was used by the Bethlehem employees installing various valves and pipes and pumping bilge water in the engine area.  As the result of this inspection, an amended citation was issued on March 8, 1974, alleging, *inter alia*, a nonserious violation of 29 C.F.R. § 1915.51(a) and proposing no penalty.  The regulation allegedly violated is a housekeeping provision which requires that "[a]dequate aisles and passageways shall be maintained in all work areas."[4]

On May 9, 1974, another Compliance Safety & Health Officer conducted an inspection[5] of a vessel, the U.S. Coast Guard

1.  29 U.S.C. § 666(a) provides:
    "Any employer who willfully or repeatedly violates the requirements of section 654 of this title, any standard rule, or order promulgated pursuant to section 655 of this title, or regulations prescribed pursuant to this chapter, may be assessed a civil penalty of not more than $10,000 for each violation."

2.  The Commission's opinion and order is printed in 20 OSAHRC 227 (No. 8392, 1975).

3.  The parties entered into a stipulation of facts dated November 1974.  App. at 17–25.

4.  29 C.F.R. § 1915.51(a) provides:
    "Good housekeeping conditions shall be maintained at all times.  Adequate aisles and passageways shall be maintained in all work areas.  All staging platforms, ramps, stairways, walkways, aisles, and passageways on vessels or dry docks shall be kept clear of all tools, materials, and equipment except that which is in use, and all debris such as welding rod tips, bolts, nuts, and similar material.  Hose and electric conductors shall be elevated over or placed under the walkway or working surfaces or covered by adequate crossover planks."

5.  This inspection was carried out without a warrant, and Bethlehem now contends that the inspection violated its Fourth Amendment rights.  We note that the inspections were on Government property and petitioner would have no standing to raise this issue.  See *Bloomfield Mech. Cont., Inc. v. O. S. H. R. C.,*

Vessel Glacier, docked at the San Pedro Yard for repairs. During the course of his inspection, the Officer observed welding and burning leads, oxyacetylene hoses and other hoses lying on the working surface, obstructing the passageways where welders and fitters were erecting steel bunkheads in the dry stores locker area. As a result of this inspection, a citation was issued on May 16, 1974, alleging a "repeat" violation of the housekeeping regulation, 29 C.F.R. § 1915.-51(a). A penalty of $60.00 was proposed for the alleged "repeated" violation.

Bethlehem timely filed with the Secretary of Labor a notification of intent to contest the citation and the proposed penalty of $60.00, thus preserving its right to review 29 U.S.C. § 659(a). Pursuant to 29 U.S.C. § 659(c) and 5 U.S.C. § 554, the Secretary issued a complaint against Bethlehem. The complaint stated that Bethlehem was guilty of "a repeat violation within the meaning of Section 17(a) of the Act, in that [it] had been previously cited for violation of the standard" (29 C.F.R. § 1915.51(a)). App. at 10.

The matter was submitted to an administrative law judge for decision. Bethlehem did not contest that it had violated 29 C.F.R. § 1915.51(a) for the second time at its San Pedro Yard, but it did contend that this second violation did not mean that it "repeatedly" violated the regulation within the meaning of 29 U.S.C. § 666(a). In a stipulation, the parties agreed that the proposed $60.00 fine was reasonable should it be held that Bethlehem's actions fell within the scope of § 666(a), and that a $30.00 fine under § 666(c)[6] would be reasonable in the

event that § 666(a) should be found inapplicable.

The principal issue[7] before the administrative law judge, then, was whether § 666(a) applied to the undisputed facts of this case. That section provides:

"Any employer who willfully or repeatedly violates the requirements of section 654 of this title, any standard, rule, or order promulgated pursuant to section 655 of this title, or regulations prescribed pursuant to this chapter, may be assessed a civil penalty of not more than $10,000 for each violation."

The administrative law judge held that "Congress reasonably intended only to embrace repeated instances of the same violation within the $10,000 range" under § 666(a), and that this case involved a different violation, though of the same regulation. *Secretary v. Bethlehem Steel Corp.,* 20 OSAHRC 227, 239 (1974).

The Secretary of Labor filed a petition for discretionary review of the administrative law judge's decision with the Occupational Safety and Health Review Commission. The Commission granted review, and on September 17, 1975, reversed the administrative law judge. It held that the employer's state of mind was not relevant to a finding of a "repeated" violation within the meaning of § 666(a), and that a "repeated" violation occurred when the same regulation was violated for a second time, though the two violations were not factually identical. 20 OSAHRC 227, 229–30 (1975). The Commission accepted the stipulation of the parties and assessed a fine of $60.00.

---

519 F.2d 1257, 1263 (3d Cir. 1975), and note 13, *infra.*

6. 29 U.S.C. § 666(c) permits the imposition of a fine of up to $1,000. for each nonserious violation of the requirements of § 654, or any standard, rule or order, promulgated under § 655, or of regulations prescribed pursuant to the Act.

7. Bethlehem also contended that the citation issued by the Secretary was defective under 29 U.S.C. § 658(a) because it did not refer to any previous citations forming the basis of the "repeat" charge. The section provides in part that

"[e]ach citation . . . . shall describe with particularity the nature of the violation . . . .." The administrative law judge rejected this contention, and that ruling was not challenged before the Occupational Safety and Health Review Commission. 20 OSAHRC at 228. We note that 29 U.S.C. § 660(a) provides, *inter alia*:

"No objection that has not been urged before the Commission shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."

Bethlehem has filed with this court a timely petition for review of the Commission's order and we have jurisdiction. 29 U.S.C. § 660(a).

## II. THE MEANING OF "REPEATEDLY"

Resolution of this case rests on the construction given the word "repeatedly" in § 666(a). This is a question of law, and our review is necessarily broad. As this court stated in *Frank Irey, Jr., Inc. v. O. S. H. R. C.,* 519 F.2d 1200, 1206 (3d Cir. 1974): [8]

> "[I]t is the duty of the courts to interpret the statute under which the agency functions and to determine whether the agency is acting within the congressional purpose."

Our starting point is with the word "repeatedly" itself, though the meaning of a word in a statute cannot be determined in isolation. Webster's Third Edition does not define "repeatedly," but it states that the word is the adverbial form of the adjective "repeated." That adjective is defined as follows:

> "1: renewed or recurring again and again: constant, frequent [—absences] [—mistakes] [—changes of plan]
> 2: said, done, or presented again [an often—excuse] [an eloquently—speech] [an easily—pattern]"

The usage examples given by the dictionary for the first definition can easily be converted to examples of the use of "repeatedly" while retaining the sense of the original phrase—*e. g.,* "he is absent repeatedly." The usage examples given for the second definition cannot be so altered. This is illustrated by the following sentences:

> It is a repeated speech.
> It is an often repeated speech.
> It is a speech made repeatedly.

The first sentence uses "repeated" in the sense of the dictionary's second definition—the speech has been given before, perhaps only once before. Adding the adverb "often" to modify the adjective "repeated" makes the second sentence mean "the speech is given many times." The third sentence shows that "repeatedly" is the equivalent of "often repeated," or, in other words, the plain and ordinary meaning of the word "repeatedly" is "constantly, frequently."

The Secretary contends that the statute facially permits a far broader interpretation of "repeatedly" than the one applied by the Commission in the instant case (that is, an employer must violate the identical standard of regulation more than once in order to be guilty of a "repeated" violation), and therefore the Commission's interpretation is "*a fortiori* rational." The Secretary points out that § 666(a) provides in part that:

> "Any employer who . . . repeatedly violates the requirements of section 654 of this title . . . may be assessed a civil penalty of not more than $10,000 for each violation."

Section 654 provides:

> "(a) Each employer—
> (1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or likely to cause death or serious physical harm to his employees;
> (2) shall comply with occupational safety and health standards promulgated under this chapter."

The literal words of the statute, as understood by the Secretary, would permit the finding of a § 666(a) violation whenever the general duty to provide a work place free from serious, recognized hazards has been violated more than once, no matter how factually unrelated the two infractions may be. More strikingly, note that § 654 is violated each time *any* safety standard is violated, no matter how unserious the violation might be. Thus, the Secretary contends that the literal terms of § 666(a) would be applicable if two unrelated standards were violated in unrelated circumstances. The Secretary seems to recognize that this extremely harsh interpretation could not have been intended by Congress.

---

**8.** The procedural history of *Frank Irey* is discussed at note 9, *infra.*

The Commission's interpretation of "repeatedly" as requiring that the same standard or regulation must be violated twice before § 666(a) applies certainly narrows the potential reach of § 666(a), but it reads out of the statute entirely the reference to § 654. Rather than being "*a fortiori* correct," the Commission's interpretation requires plain statutory language to be ignored in order to prevent an absurd result.

■ Our court has interpreted § 666(a) previously, but the case dealt with the definition of "willfully," rather than "repeatedly." Nevertheless, much of the discussion in our previous case, *Frank Irey, Jr., Inc. v. O. S. H. R. C.*, 519 F.2d 1200 (3d Cir. 1974),[9] is helpful to the resolution of the instant case:

> "It is obvious from the size of the penalty which can be imposed for a 'willful' infraction—ten times that of a 'serious' one—that Congress meant to deal with a more flagrant type of conduct than that of a 'serious' violation. Willfulness connotes defiance or such reckless disregard of consequences as to be equivalent to a knowing, conscious, and deliberate flaunting of the Act. Willful means more than merely voluntary action or omission—it involves an element of obstinate refusal to comply.

> "We believe that a restrictive definition is appropriate here since otherwise there would be no distinction between a 'serious' offense and a 'willful' one. The lack of demarcation would permit the agency to assess a higher penalty than that which is authorized for conduct defined as a 'serious' violation. A broad interpretation of 'willful' would disrupt

the gradations of penalties and violations so carefully provided in the Act." *Id.* at 1207. The Secretary points out that "repeatedly" is joined to "willfully" in the statute by the disjunctive "or," and he contends that therefore "repeatedly" means something different from "willfully." While there may be great merit in this contention, a broad interpretation of "repeatedly" would "disrupt the gradations of penalties and violations so carefully provided in the Act" just as much as a broad interpretation of "willfully."[10]

Though the legislative history is meager, it does provide some help in determining what Congress contemplated by the phrase "willfully or repeatedly." The original Senate bill did not contain a civil penalty for willfully or repeatedly violating standards or regulations under the Act, but it did provide for a criminal penalty of not more than $10,000. and/or six months in jail for willful violations. 1970 U.S.Code Cong. & Admin.News p. 5212. The House amendment provided a civil penalty of up to $10,000. for willful or repeated violations. These two provisions were compromised at conference—the House's civil provision was retained and the Senate's criminal provision was modified to apply only to willful violations which result in the death of an employee. *Id.* at 5237–38. Thus, "willfully" first appeared in a criminal provision, and "repeatedly" was added when that criminal provision was changed to a civil provision. The genesis of "willfully" in a criminal provision strongly suggests that it was originally meant to require a strong showing of intent. To establish a civil violation, it is normally not necessary to show intent, and therefore it seems reasonable to conclude

---

9. *Frank Irey* was affirmed en banc, 519 F.2d 1215 (3d Cir. 1975), and certiorari has been granted, 424 U.S. 964, 96 S.Ct. 1458, 47 L.Ed.2d 731 (1976). The en banc decision and the grant of certiorari were limited to claims that the employer had a constitutional right to a jury trial, and that the Act abridged that right. See note 13, *infra*.

10. The Secretary points out that § 666(a) does not require the imposition of a $10,000. penalty; it merely permits that imposition of a pen-

alty up to $10,000. Moreover, § 666(i) sets out factors which must be considered in setting the amount of a penalty. Nevertheless, within the limits set out in the statute, the amount of penalty assessed for any violation is a matter of discretion, and a court's review is limited to abuse of discretion. The "gradations of penalties . . . so carefully provided in the Act" refers to the limitations Congress purposefully placed on the otherwise broad discretion of the Commission.

that the House added "repeatedly" to serve as an objective basis on which to attach liability.

The compelling logic of *Frank Irey* indicates that § 666(a) is directed at particularly flagrant conduct, and therefore the objective conduct which "repeatedly" encompasses must be similar to that which would raise an inference of willfulness. The following discussion of § 666(a) by the Commission in an earlier case sets forth what we believe to be an appropriate starting point for the development of a workable definition of "repeatedly":

> "As a starting point, it should be observed that the size of a penalty that can be imposed for a 'repeated' violation is ten times that for a singular 'serious' violation. Hence, it is obvious that Congress intended to deal with a more flagrant type of conduct than just a single serious violation. *Cf. Frank Irey, Jr., Inc. v. O. S. H. R. C.,* . . . which discusses 'willful' violations of the Act. These are grouped with 'repeated' violations as being the most severe in the hierarchy of civil penalties. The term 'repeated' is therefore read to mean happening more than once [11] in a manner which flaunts the requirements of the Act. With a test of whether the requirements of the Act are being flaunted it cannot be said abstractly just how many places of employment or conditions of employment should be considered. Each case must be decided upon its own merits and turn upon the nature and extent of the violations involved."

11. The language of the opinion would have been accurate, we think, if "at least twice" had been substituted for "once." Given that the plain and ordinary meaning of the word "repeatedly" is "constantly, frequently, occurring again and again," see pages 159–161 *supra*, we do not believe that only two violations can ever form the basis of a "repeatedly" violation within the meaning of § 666(a). We note that one of the factors the Commission is directed to consider in determining the amount of a penalty is "the history of previous violations." 29 U.S.C. § 666(i).

12. Quoted at page 160, *supra*.

*Secretary v. General Electric Co.,* 17 OSAHRC 49, 65–66 (No. 2739, 1975).

The mere occurrence of a violation of a standard or regulation more than twice does not constitute that flaunting necessary to be found before a penalty can be assessed under § 666(a). What acts constitute flaunting of the requirements of the Act must be determined, in the first instance, by the Secretary and the Commission, but they should be guided by our statements in *Frank Irey* quoted at page 161, *supra*. It should be noted that § 666(a) can be applicable even if the same standard is never violated twice, if the general or specific duty clauses of § 654(a) [12] are repeatedly violated in such a way as to demonstrate a flaunting disregard of the requirements of the Act. Among the factors the Commission should consider when determining whether a course of conduct is flaunting the requirements of the Act are the number, proximity in time, nature and extent of violations, their factual and legal relatedness, the degree of care of the employer in his efforts to prevent violations of the type involved, and the nature of the duties, standards, or regulations violated.[13]

## III. CONCLUSION

Since it is undisputed that Bethlehem was cited for only two violations of a specific standard, it has not "repeatedly" violated any standard. There is no need, therefore, to remand this case to the Commission for a determination of whether Bethlehem's conduct constituted a flaunting of the Act.[14]

13. In applying the "repeatedly" portion of § 666(a), the Commission thus must determine that the acts themselves flaunt the requirements of the statute, and need not determine whether the acts were performed with an intent to flaunt the requirements of the statute. "Repeatedly" is an objective test, and the Commission possesses considerable discretion in determining whether conduct comes within § 666(a).

14. Bethlehem has raised before us several other issues including the contention that its right to a jury trial under either the Sixth Amendment or the Seventh Amendment has been violated. This important issue has been resolved

The petition for review will be granted, the order of the Commission will be modified to assess a penalty in the amount of $30.00, in accordance with paragraph 25 of the stipulation (24a), and, as so modified, such order will be enforced.[15]

in this Circuit adversely to Bethlehem's claims. *Frank Irey, Jr., Inc. v. O. S. H. R. C.,* 519 F.2d 1200 (3d Cir. 1974), *aff'd on hearing en banc,* 519 F.2d 1215 (1975), *petition for certiorari granted,* 424 U.S. 964, 96 S.Ct. 1458, 47 L.Ed. 2d 731 (1976). Certiorari was granted limited to the following question:

"Assuming arguendo that such civil penalties and enforcement procedures are civil in nature and effect, whether such procedures deny the defendant employer his right to jury trial guaranteed by the Seventh Amendment to the Constitution."

424 U.S. 964, 96 S.Ct. 1458.

We need not address ourselves to this contention or any of the others raised by petitioner, see notes 5 and 7, *supra,* because of our resolution of the "repeatedly" issue and the resulting disposition of this case.

15. 29 U.S.C. § 660(a) provides, *inter alia* :

"[T]he court shall have . . . power . . . to make and enter upon the pleadings, testimony, and proceedings set forth in such record a decree affirming, modifying, or setting aside in whole or in part, the order of the Commission and enforcing the same to the extent that such order is affirmed or modified."