**Robert B. REICH, Secretary of Labor, United States Department of Labor, Petitioner,**

**v.**

**D.M. SABIA COMPANY and Occupational Safety and Health Review Commission, Respondents.**

**No. 95–3697.**

United States Court of Appeals, Third Circuit.

Argued June 24, 1996.

Decided July 29, 1996.

J. Davitt McAteer, Acting Solicitor of Labor, Joseph M. Woodward, Associate Solicitor for Occupational Safety and Health, Ann Rosenthal, Counsel for Appellate Litigation,

Terri P. Deleon (argued), U.S. Department of Labor, Washington, D.C., for Petitioner.

Thomas J. McGoldrick, Robert T. Carlton, Jr. (argued), McAleese, McGoldrick & Susanin, King of Prussia, PA, for Respondents.

Before: ALITO, McKEE and GARTH, Circuit Judges.

### OPINION OF THE COURT

GARTH, Circuit Judge.

The Secretary of Labor's petition for review of the decision of the Occupational Safety and Health Review Commission ("Commission")[1] presents the question of whether respondent D.M. Sabia Company ("Sabia") committed a "repeated" violation of a safety standard within the meaning of 29 U.S.C. § 666(a). Applying the definition of "repeated" announced in *Bethlehem Steel Corp. v. OSHRC*, 540 F.2d 157 (3d Cir.1976), the Commission concluded that Sabia had not committed a "repeated" violation.

The Secretary contends that we are neither bound by *Bethlehem* nor bound by that court's 1976 definition of the term "repeated" as that term then appeared in the text of 29 U.S.C. § 666(a).

Sabia, on the other hand, argues that *Bethlehem* controls the decision in this case and cannot be overruled by us as a subsequent panel of this court.[2]

In *Bethlehem*, we held that the Secretary, in order to establish a "repeated" violation, under the Occupational Safety and Health Act of 1970 ("Act"), 29 U.S.C. § 651 *et seq.*, must prove that the employer had violated an Occupational Safety and Health Administration (OSHA) standard on at least two previous occasions; and that the employer had "flaunted" the requirements of the Act. *Id.* at 162. In 1990, however, 29 U.S.C. § 666(a) was amended. In light of that amendment,

1. The Occupational Safety and Health Act established the Commission as an independent adjudicative forum for employers who wish to contest citations issued by the Secretary. 29 U.S.C. §§ 659, 661. The Commission is a quasijudicial body, which is independent of the Occupational Safety and Health Administration and the Department of Labor. *See Cuyahoga Valley Ry. Co. v. United Transp. Union*, 474 U.S. 3, 7, 106 S.Ct. 286, 288, 88 L.Ed.2d 2 (1985); *Marshall v. Sun Petroleum Prods. Co.*, 622 F.2d 1176, 1183–84 (3d Cir.), *cert. denied*, 449 U.S. 1061, 101 S.Ct. 784, 66 L.Ed.2d 604 (1980).

2. Section 9.1 of this court's Internal Operating Procedures provides:

It is the tradition of this court that the holding of a panel in a reported opinion is binding on subsequent panels. Thus, no subsequent panel overrules the holding in a published opinion of a previous panel. Court in banc consideration is required to do so.

Third Circuit I.O.P. 9.1.

the rationale and logic of *Bethlehem,* while binding until the 1990 amendment, thereafter did not retain the requisite precedential authority that would preclude us from taking a fresh look at the now-amended section 666(a).

■ Our fresh look has resulted in a new definition: we now deem an OSHA violation to be "repeated" "if, at the time of the alleged repeated violation, there was a Commission final order against the same employer for a substantially similar violation." *Secretary of Labor v. Potlatch Corp.,* 7 O.S.H. Cas. (BNA) 1061, 1063 (Rev. Comm'n 1979). Applying this interpretation, we conclude that Sabia committed a "repeated" violation. Accordingly, we will reverse.

### I.

The Commission had jurisdiction under 29 U.S.C. § 659(c). We have appellate jurisdiction over the Commission's final order under 29 U.S.C. § 660.

■ The Commission's findings of fact must be upheld if supported by substantial evidence in the record as a whole. 29 U.S.C. § 660(a); *D. Harris Masonry Contracting, Inc. v. Dole,* 876 F.2d 343, 344 (3d Cir.1989). Legal conclusions may be set aside if they are "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Atlantic & Gulf Stevedores v. OSHRC,* 534 F.2d 541, 547 (3d Cir.1976). In addition, we must defer to an agency's reasonable interpretation of an ambiguous administrative statute. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–46, 104 S.Ct. 2778, 2781–84, 81 L.Ed.2d 694 (1984).

---

**3.** Section 17(a) of the Occupational Safety and Health Act provides:

Any employer who willfully or *repeatedly* violates the requirements of section 654 of this title, any standard, rule, or order promulgated pursuant to section 655 of this title, or regulations prescribed pursuant to this chapter, may be assessed a civil penalty of not more than $70,000 for each violation but not less than $5,000 for each willful violation.

29 U.S.C. § 666(a) (emphasis added).

**4.** Section 1926.451, regulating scaffolding, provides in relevant part:

Guardrails and toeboards shall be installed on all open sides and ends of platforms more than

### II.

Sabia, a Pennsylvania corporation, is a masonry contractor which employs approximately 152 employees. On October 26, 1993, Mark Stelmack, an OSHA compliance officer, observed Sabia employees setting block from two "non-stop" scaffold towers located along the north wall of a construction site at 315 North York Road, Willow Grove, Pennsylvania. The scaffold platforms were sixteen to twenty feet above the ground. No guardrails or toeboards were provided on the ends of the scaffold towers or on the inside of the eastern tower where it extended beyond the end of the wall. Hence, Sabia employees working on the scaffold towers were exposed to the danger of falling off the scaffolds, which could result in serious injuries or death.

On November 26, 1993, based on Stelmack's inspection, OSHA issued two citations, only one of which is relevant to this appeal. The relevant citation alleged a "repeat"[3] violation of 29 C.F.R. § 1926.451(a)(4)[4] for failure to install standard guardrails and toeboards on all open sides and ends of platforms above the ground. Sabia had been cited on three previous occasions for the same or similar violations, each of which resulted in a final order: July 22, 1974; January 23, 1985; and May 16, 1991. Jt.App. 20 (Stipulation of Facts).

Relying on a stipulated record[5] and on *Potlatch,* the ALJ held that Sabia had "repeatedly" violated section 1926.451(a)(4) "because 'at the time of the alleged repeated violation, there was a Commission final order against the same employer for a substantially similar violation....' " Jt.App. 14 (quoting *Potlatch,* 7 O.S.H. Cas. at 1063). Accordingly, the ALJ assessed a $4,000 fine.

---

10 feet above the ground or floor, except needle beam scaffolds and floats.... Scaffolds 4 feet to 10 feet in height, having a minimum horizontal dimension in either direction of less than 45 inches, shall have standard guardrails installed on all open sides and ends of the platform.

29 C.F.R. § 1926.451(a)(4).

**5.** Notably, the parties stipulated that the cited conditions violated section 1926.451(a)(4), involved exposure to a "serious" hazard, and exposed employees to potential falls of between sixteen and twenty feet. Jt.App. 20.

The ALJ acknowledged that the Commission's definition of "repeated," as articulated in *Potlatch,* differed from the Third Circuit's definition, as enunciated in *Bethlehem Steel Corp. v. OSHRC,* 540 F.2d 157 (3d Cir.1976). The ALJ nevertheless applied the *Potlatch* definition rather than *Bethlehem*'s definition, based upon the ALJ's reading of *Jersey Steel Erectors v. Secretary of Labor,* 16 O.S.H. Cas. (BNA) 1162 (Rev. Comm'n 1993), *aff'd,* 19 F.3d 643 (3d Cir.1994).

The ALJ interpreted the Commission's decision in *Jersey Steel* as requiring application of the *Potlatch* definition even in cases arising within the jurisdiction of the Third Circuit. The Commission, however, rejected the ALJ's interpretation of *Jersey Steel.* The Commission explained that in *Jersey Steel,* it had found that the employer's violations would be considered "repeated" under *either* definition. In so holding, the Commission recognized that *Bethlehem*'s definition differed from the Secretary's definition, as articulated in *Potlatch.* Hence, in a decision dated October 30, 1995, the Commission reversed the ALJ's order.

The Commission first noted its disagreement with our analysis in *Bethlehem,* but then indicated that it felt compelled to apply the *Bethlehem* definition of "repeatedly" in cases arising within the Third Circuit. Applying the *Bethlehem* test, the Commission concluded that the Secretary had failed to prove that Sabia's violation was "repeated." Specifically, the Commission found that while Sabia's four violations of the same regulation over a period of years met the first prong of the *Bethlehem* test (i.e., that the employer had committed more than two violations), the Secretary had not established the second prong of *Bethlehem* (i.e., that the employer had "flaunted" the Act). Finding that the

challenged violation was "serious,"[6] the Commission assessed a $1,000 penalty.

The Secretary of Labor filed a timely petition for review of the final order of the Commission.

### III.

The central, and indeed the only, issue on this appeal is whether Sabia's violation of 29 C.F.R. § 1926.451(d) constituted a "repeated" violation within the meaning of 29 U.S.C. § 666(a). Applying the *Potlatch* standard, the Secretary contends that "[a] violation is repeated under section 17(a) of the Act if, at the time of the alleged repeated violation, there was a Commission final order against the same employer for a substantially similar violation." 7 O.S.H. Cas. at 1063.

As stipulated by the parties, Sabia had been cited for the same or similar violation of section 1926.451(a)(4) on three previous occasions, and "each citation went to a final order." Jt.App. 20. Hence, the stipulated facts, under the Secretary's theory, establish a "repeated" violation under the *Potlatch* standard.

As noted earlier in this opinion, the Commission had held that the *Potlatch* standard could not be applied in this circuit as it conflicted with the standard articulated in *Bethlehem.* In *Bethlehem,* which was the first court of appeals decision to construe the term "repeatedly" as it appeared in the unamended 29 U.S.C. § 666(a), we held that a violation is "repeated" if (1) the employer had violated the same standard on at least two previous occasions;[7] and (2) the employer "flaunted" the requirements of the Act.[8] *Bethlehem* 540 F.2d at 162. In determining

---

**6.** The Act describes four categories of violations (other-than-serious, serious, repeated, and willful) and establishes a range of penalties for each category. 29 U.S.C. § 666. Furthermore, the Act defines a "serious" violation as follows:

[A] serious violation shall be deemed to exist in a place of employment if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.

*Id.* § 666(k).

**7.** We stated that "we do not believe that only two violations can ever form the basis of a 'repeatedly' violation within the meaning of § 666(a)." *Bethlehem Steel,* 540 F.2d at 162 n. 11.

**8.** Subsequently, the Fourth and Ninth Circuits rejected the *Bethlehem* court's approach, adopting the definition of "repeated" advocated by the Secretary. *See George Hyman Constr. Co. v. OSHRC,* 582 F.2d 834, 839 (4th Cir.1978); *Todd Shipyards Corp. v. Secretary of Labor,* 566 F.2d 1327, 1330–31 (9th Cir.1977). The Commission eventually also acquiesced to the Secretary's viewpoint on this issue in *Potlatch.*

whether an employer had "flaunted" the requirements of the Act, the *Bethlehem* court considered the following factors:

the number, proximity in time, nature and extent of violations, their factual and legal relatedness, the degree of care of the employer in his efforts to prevent violations of the type involved, and the nature of the duties, standards, or regulations violated.

*Id.* at 162. The Commission found that the stipulated facts in the present case were insufficient to establish that Sabia had "flaunted" the requirements of the Act.

The Secretary asserts, however, that *Bethlehem* has been superseded, in light of the 1990 amendment to 29 U.S.C. § 666(a).[9] Sabia, on the other hand, argues that *Bethlehem* continues to be "good law" and will continue to be binding precedent until overruled by this court *en banc.*

 We agree with the Secretary that *Bethlehem* does not control the disposition of this case. Although a panel of this court is bound by, and lacks authority to overrule, a published decision of a prior panel, *see supra* note 2, a panel may reevaluate a precedent in light of intervening authority and amendments to statutes or regulations. *See United States v. Joshua,* 976 F.2d 844, 853 (3d Cir. 1992) (holding that a panel is "free to consider the [Sentencing] Commission's [newly adopted interpretive] commentary and, based thereon, reach a decision contrary to the holdings of [prior precedent]"); *United States v. Bass,* 54 F.3d 125, 131 (3d Cir.1995) (explaining that "*Joshua,* under certain circumstances, permits courts in this circuit to consider subsequent amendments to official guidelines commentary when interpreting prior guidelines, even if the new commentary conflicts with a panel's decision rendered prior to the amendment").

Our sister circuits abide by that self-same principle. *See, e.g., Williams v. Ashland Eng'g Co.,* 45 F.3d 588, 592 (1st Cir.) ("An existing panel decision may be undermined by controlling authority, subsequently announced, such as an opinion of the Supreme Court, an en banc opinion of the circuit court, or a statutory overruling."), *cert. denied,* —— U.S. ——, 116 S.Ct. 51, 133 L.Ed.2d 16 (1995); *Mesa Verde Constr. Co. v. Northern Cal. Dist. Council of Laborers,* 861 F.2d 1124, 1136 (9th Cir.1988) (en banc) (holding that "if a panel finds that a NLRB interpretation of the labor laws is reasonable and consistent with those laws, the panel may adopt that interpretation even if circuit precedent is to the contrary"); *Landreth v. Commissioner,* 859 F.2d 643, 648 (9th Cir. 1988) (holding that a three-judge panel may reexamine circuit precedent "where Congress has retroactively clarified the meaning of the statute at issue"). *Cf. also Patterson v. McLean Credit Union,* 491 U.S. 164, 173, 109 S.Ct. 2363, 2370, 105 L.Ed.2d 132 (1989) (precedent may be overruled when intervening development of law has "weakened" conceptual underpinnings of prior decision).

In the present case, two intervening developments radically altered the legal landscape which gave rise to the *Bethlehem* court's interpretation of section 666(a).

### A.

The first development that took place was the 1990 amendment to section 666(a), which for the first time distinguished between the civil penalties for a "willful" violation and those for a "repeated" violation. *See* Pub.L. 101–508, § 3101, 104 Stat. 1388–29 (Nov. 5, 1990). In 1976, when *Bethlehem* was decided, section 666(a) imposed no floor as to penalties and imposed the same $10,000 pen-

---

The *Potlatch* test, for the most part, is derived from *George Hyman* and *Todd Shipyards.* Since *Potlatch,* every other court of appeals which has addressed this issue has adopted the *Potlatch* definition. *See, e.g., D & S Grading Co. v. Secretary of Labor,* 899 F.2d 1145, 1147 (11th Cir. 1990); *J.L. Foti Constr. Co. v. OSHRC,* 687 F.2d 853, 856–57 (6th Cir.1982); *Dun–Par Engineered Form Co. v. Marshall,* 676 F.2d 1333, 1337 (10th Cir.1982); *Kent Nowlin Constr. Co. v. OSHRC,* 648 F.2d 1278, 1282 (10th Cir.1981); *Bunge Corp. v. Secretary of Labor,* 638 F.2d 831, 834 (5th Cir.1981).

9. In 1980, we reaffirmed *Bethlehem Steel* in *Jones & Laughlin Steel Corp. v. Marshall,* 636 F.2d 32 (3d Cir.1980), noting that

we remain bound by our decision in *Bethlehem Steel* unless that case is overturned by the Court in banc, or until the Supreme Court chooses to resolve the conflicting interpretations of [section 17(a)] adopted by the Fourth and Ninth Circuits.

*Id.* at 33 n. 1.

alty ceiling for "repeated" violations as for willful violations:

> Any employer who willfully or repeatedly violates the requirements of section 654 of this title ... may be assessed a civil penalty of not more than $10,000 for each violation.

29 U.S.C. § 666(a) (1976).

According to the *Bethlehem* court, the fact that the civil penalty limitations were the same for "repeated" and "willful" violations demonstrated that Congress intended that the term "repeated" be equated with the term "willful." The *Bethlehem* court, in defining the term "repeated," focused almost wholly on the penalty structure set forth in the then-section 666(a), which, as noted, did not distinguish between the two types of violations. To dispel any thought that the term "repeated" had a different meaning than the term "willful," the *Bethlehem* court reasoned that the violative conduct must be sufficiently flagrant to rise to the level of "willful" conduct. In concluding that "the ... conduct which [the term] 'repeatedly' encompasses must be similar to that which would raise an inference of willfulness," *Bethlehem*, 540 F.2d at 162, the court relied conclusively on the fact that section 666(a) authorized identical civil penalties for "repeated" and "willful" violations.

It was only with the 1990 amendment to section 666(a) that the statutory landscape changed. That amendment, by requiring a $5,000 minimum penalty for *willful* violations but not for *repeated* violations, negated the central premise underlying the *Bethlehem* decision. Regardless of the validity of *Bethlehem*'s reasoning with respect to the pre–1990 section 666(a), that statute, as amended, clearly shows that Congress, at least by and after 1990, intended a substantive distinction between a *willful* violation and a violation that is *repeated* but not *willful*.[10] Hence,

under the amended statute, *Bethlehem*'s interpretation of section 666(a), which equates "repeated" with "willful," is no longer justified.[11]

### B.

Secondly, subsequent Supreme Court precedent has also undercut *Bethlehem*. Specifically, *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), decided some eight years after *Bethlehem*, established that a federal court must defer to a reasonable construction of a statute by the administrative agency charged with administering the statute if Congress has not directly spoken to the precise question at issue. *Id.* at 843, 846, 104 S.Ct. at 2781, 2783 ("[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.... If the agency's choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, [a court] should not disturb it unless it appears from the statute ... that the accommodation is not one that Congress would have sanctioned."); *see also, e.g., Elizabeth Blackwell Health Ctr. for Women v. Knoll*, 61 F.3d 170, 182 (3d Cir. 1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 816, 133 L.Ed.2d 760 (1996).

Recently, the Supreme Court reemphasized that courts must defer to an agency's interpretation of statutes that the agency is charged with administering, explaining why such a high degree of deference is owed:

> It is our practice to defer to the reasonable judgments of agencies with regard to the meaning of ambiguous terms in statutes they are charged with administering.... We accord deference to agencies ... not because of a presumption they drafted the provisions in question, or were present at the hearings, or spoke to the principal

---

**10.** Our conclusion finds support in the legislative history of the amendment, wherein the Conference Report explained:

> The new mandatory OSH Act minimum penalty applies *only to willful violations*. No minimums are imposed for *repeated*, serious, non-serious or posting violations, or for failure to correct a violation. The mandatory minimum for a willful violation is a penalty floor that is not intended to become a penalty ceiling. The

conferees expect OSHA to issue fines well above this mandatory minimum level when the willful violation warrants such a penalty.

H.R.Rep. No. 101–881, *reprinted in* 1990 U.S.C.C.A.N. 2050, 2394 (emphases added).

**11.** We are satisfied that the *Bethlehem* decision, up until 1990, bound subsequent panels and could only be overturned by a Supreme Court decision or a decision by our *en banc* court.

sponsors; but rather because of a presumption that Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows.... [T]he whole point of *Chevron* is to leave the discretion provided by the ambiguities of a statute with the implementing agency.

*Smiley v. Citibank (South Dakota), N.A.,* — U.S. ——, —— – ——, 116 S.Ct. 1730, 1733–34, 135 L.Ed.2d 25 (1996).

At the time that *Bethlehem* was decided, the court did not have the benefit of the Supreme Court's pronouncements in *Chevron* and *Smiley.* Moreover, at the time, it was unclear whether deference was owed to the Secretary or the Commission when the two administrative actors disagreed. *See Budd Co. v. OSHRC,* 513 F.2d 201, 205 n. 12 (3d Cir.1975) ("[W]e need not address the question whether the court should afford greater respect to the Commission's interpretation or the Secretary's when the two are unable to agree as to the proper construction of a safety standard."); *see also Bethlehem Steel Corp. v. OSHRC,* 573 F.2d 157, 160 (3d Cir. 1978) (*"Bethlehem II"*) ("Unlike *Budd,* we do not have an authoritative agency interpretation to assist us since the decisions of the Commission are themselves in conflict and inconsistent with the Secretary's position. We rely, therefore, on the plain wording of the standard....").

Hence, the *Bethlehem* court had not deferred to the Secretary's construction of section 666(a), opting instead to exercise plenary review. *See Bethlehem,* 540 F.2d at 160 ("This is a question of law, and our review is necessarily broad."). Since then, of course, the Supreme Court has explicitly held that the Secretary is the administrative actor to whom deference is owed. *See Martin v. OSHRC,* 499 U.S. 144, 152, 111 S.Ct. 1171, 1176, 113 L.Ed.2d 117 (1991) ("The power to render authoritative interpretations of OSH Act regulations is a 'necessary adjunct' of the Secretary's powers to promulgate and to en-

force national health and safety standards."). Under *Martin,* a federal court should defer to the Secretary where there is a disagreement between the Secretary and the Commission. By employing a plenary standard of review and failing to defer to the Secretary's interpretation of section 666(a), *Bethlehem* offended the *Martin* standard.[12]

Finally, it is evident that the Secretary's interpretation of the term "repeatedly" in the post–1990 section 666(a) represents not only a reasonable interpretation but one that is plainly consistent with the language of the statute. Enhanced liability for a second or subsequent violation of the same or similar regulation or standard is appropriate because once an employer has been found to have violated the Act, it is reasonable to expect that extra precautions will be taken to prevent a "repeated" violation.

## IV.

Although Sabia insists that we are bound by *Bethlehem,* our analysis, which is informed by a different statute and a new standard of review, dictates otherwise. In our opinion, the *Bethlehem* court correctly decided the issue before it. It did so in light of the statutory text which it was called upon to interpret and in light of the standard by which it reviewed the statute before it. Since then, as we have earlier observed, the statute and the standard of review have changed so that *Bethlehem* no longer controls our disposition.

We therefore conclude that a violation is "repeated" "if, at the time of the alleged repeated violation, there was a Commission final order against the same employer for a substantially similar violation." *Potlatch,* 7 O.S.H. Cas. at 1063. Accordingly, the formula prescribed in *Bethlehem* for determining when a repeated violation occurs is no longer operative. A repeated violation requires no more than a second violation and does not require proof of "flaunting." Since Sabia stipulated that it had been cited for "the same or similar violation" of section 1926.451(a)(4) on May 16, 1991, a little more than two years before the present violation, and that the citation had resulted in a final

---

**12.** Moreover, since *Bethlehem,* the Commission has acceded to the Secretary's interpretation of the term "repeatedly" as used in section 666(a).

Since *Potlatch,* the Commission and the Secretary have been in full accord as to the definition of the term "repeatedly."

order of the Commission, we necessarily conclude that Sabia's violation was "repeated" within the meaning of section 666(a).

We therefore grant the Secretary's petition for review. We will vacate the order of the Commission, and we will remand to the Commission with the direction that the Commission reinstate the November 25, 1994 order of the ALJ affirming the citation and imposing a penalty of $4,000 as stipulated by the parties. Jt.App. 15.