

1996 Decisions

Opinions of the United States Court of Appeals for the Third Circuit

7-29-1996

# Sec of Labor v. D.M. Sabia Co.

Precedential or Non-Precedential:

Docket 95-3697

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

## Recommended Citation

"Sec of Labor v. D.M. Sabia Co." (1996). *1996 Decisions.* Paper 122.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/122

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

----------

No. 95-3697

----------

ROBERT B. REICH, SECRETARY OF LABOR,
UNITED STATES DEPARTMENT OF LABOR,

Petitioner

v.

D.M. SABIA COMPANY and OCCUPATIONAL
SAFETY AND HEALTH REVIEW COMMISSION,

Respondents

----------

On Petition for Review from the
Occupational Safety & Health Review Commission
(District:  93-3274)

----------

Argued Monday, June 24, 1996

BEFORE:  ALITO, McKEE
and GARTH, Circuit Judges

----------

(Opinion filed   July 29, 1996)

J. Davitt McAteer
Acting Solicitor of Labor
Joseph M. Woodward
Associate Solicitor for
Occupational Safety and Health
Ann Rosenthal
Counsel for Appellate Litigation
Terri P. Deleon (Argued)
U.S. Department of Labor
Room S-4004
200 Constitutional Ave., N.W.
Washington, D.C.  20210

Attorneys for Petitioner

Thomas J. McGoldrick

                              Robert T. Carlton, Jr. (Argued)
                              McAleese, McGoldrick & Susanin
                              455 South Gulph Road
                              Suite 240 – Executive Terrace
                              King of Prussia, PA  19406

                              Attorneys for Respondents

                         ----------

                      OPINION OF THE COURT

                         ----------

GARTH, Circuit Judge:

        The Secretary of Labor's petition for review of the
decision of the Occupational Safety and Health Review Commission
("Commission") presents the question of whether respondent D.M.
Sabia Company ("Sabia") committed a "repeated" violation of a
safety standard within the meaning of 29 U.S.C.   666(a).
Applying the definition of "repeated" announced in Bethlehem
Steel Corp. v. OSHRC, 540 F.2d 157 (3d Cir. 1976), the Commission
concluded that Sabia had not committed a "repeated" violation.
        The Secretary contends that we are neither bound by
Bethlehem nor bound by that court's 1976 definition of the term
"repeated" as that term then appeared in the text of 29 U.S.C.
  666(a).
        Sabia, on the other hand, argues that Bethlehemcontrols the
decision in this case and cannot be overruled by us
as a subsequent panel of this court.
        In Bethlehem, we held that the Secretary, in order to
establish a "repeated" violation, under the Occupational Safety
and Health Act of 1970 ("Act"), 29 U.S.C.   651 et seq., must
prove that the employer had violated an Occupational Safety and
Health Administration (OSHA) standard on at least two previous
occasions; and that the employer had "flaunted" the requirements
of the Act.  Id. at 162.  In 1990, however, 29 U.S.C.   666(a)
was amended.  In light of that amendment, the rationale and logic
of Bethlehem, while binding until the 1990 amendment, thereafter
did not retain the requisite precedential authority that would
preclude us from taking a fresh look at the now–amended section
666(a).
        Our fresh look has resulted in a new definition:  we
now deem an OSHA violation to be "repeated" "if, at the time of
the alleged repeated violation, there was a Commission final
order against the same employer for a substantially similar
violation."  Secretary of Labor v. Potlatch Corp., 7 O.S.H. Cas.
(BNA) 1061, 1063 (Rev. Comm'n 1979).  Applying this
interpretation, we conclude that Sabia committed a "repeated"
violation.  Accordingly, we will reverse.

                              I.
        The Commission had jurisdiction under 29 U.S.C.

659(c). We have appellate jurisdiction over the Commission's final order under 29 U.S.C. 660.

The Commission's findings of fact must be upheld if supported by substantial evidence in the record as a whole. 29 U.S.C. 660(a); D. Harris Masonry Contracting, Inc. v. Dole, 876 F.2d 343, 344 (3d Cir. 1989). Legal conclusions may be set aside if they are "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. 706(2)(A); Atlantic & Gulf Stevedores v. OSHRC, 534 F.2d 541, 547 (3d Cir. 1976). In addition, we must defer to an agency's reasonable interpretation of an ambiguous administrative statute. Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843–46 (1984)

## II.

Sabia, a Pennsylvania corporation, is a masonry contractor which employs approximately 152 employees. On October 26, 1993, Mark Stelmack, an OSHA compliance officer, observed Sabia employees setting block from two "non-stop" scaffold towers located along the north wall of a construction site at 315 North York Road, Willow Grove, Pennsylvania. The scaffold platforms were sixteen to twenty feet above the ground. No guardrails or toeboards were provided on the ends of the scaffold towers or on the inside of the eastern tower where it extended beyond the end of the wall. Hence, Sabia employees working on the scaffold towers were exposed to the danger of falling off the scaffolds, which could result in serious injuries or death.

On November 26, 1993, based on Stelmack's inspection, OSHA issued two citations, only one of which is relevant to this appeal. The relevant citation alleged a "repeat" violation of 29 C.F.R. 1926.451(a)(4) for failure to install standard guardrails and toeboards on all open sides and ends of platforms above the ground. Sabia had been cited on three previous occasions for the same or similar violations, each of which resulted in a final order: July 22, 1974; January 23, 1985; and May 16, 1991. Jt. App. 20 (Stipulation of Facts).

Relying on a stipulated record and on Potlatch, the ALJ held that Sabia had "repeatedly" violated section 1926.451(a)(4) "because 'at the time of the alleged repeated violation, there was a Commission final order against the same employer for a substantially similar violation . . . .'" Jt. App. 14 (quoting Potlatch, 7 O.S.H. Cas. at 1063). Accordingly, the ALJ assessed a $4,000 fine.

The ALJ acknowledged that the Commission's definition of "repeated," as articulated in Potlatch, differed from the Third Circuit's definition, as enunciated in Bethlehem Steel Corp. v. OSHRC, 540 F.2d 157 (3d Cir. 1976). The ALJ nevertheless applied the Potlatch definition rather than Bethlehem's definition, based upon the ALJ's reading of Jersey Steel Erectors v. Secretary of Labor, 16 O.S.H. Cas. (BNA) 1162 (Rev. Comm'n 1993), aff'd, 19 F.3d 643 (3d Cir. 1994).

The ALJ interpreted the Commission's decision in Jersey Steel as requiring application of the Potlatch definition even in cases arising within the jurisdiction of the Third Circuit. The

Commission, however, rejected the ALJ's interpretation of Jersey Steel. The Commission explained that in Jersey Steel, it had found that the employer's violations would be considered "re-

peated" under either definition. In so holding, the Commission recognized that Bethlehem's definition differed from the Secretary's definition, as articulated in Potlatch. Hence, in a decision dated October 30, 1995, the Commission reversed the ALJ's order.

The Commission first noted its disagreement with our analysis in Bethlehem, but then indicated that it felt compelled to apply the Bethlehem definition of "repeatedly" in cases arising within the Third Circuit. Applying the Bethlehem test, the Commission concluded that the Secretary had failed to prove that Sabia's violation was "repeated." Specifically, the Commission found that while Sabia's four violations of the same regulation over a period of years met the first prong of the Bethlehem test (i.e., that the employer had committed more than two violations), the Secretary had not established the second prong of Bethlehem (i.e., that the employer had "flaunted" the Act). Finding that the challenged violation was "serious," the Commission assessed a $1,000 penalty.

The Secretary of Labor filed a timely petition for review of the final order of the Commission.

## III.

The central, and indeed the only, issue on this appeal is whether Sabia's violation of 29 C.F.R. 1926.451(d) constituted a "repeated" violation within the meaning of 29 U.S.C. 666(a). Applying the Potlatch standard, the Secretary contends that "[a] violation is repeated under section 17(a) of the Act if, at the time of the alleged repeated violation, there was a Commission final order against the same employer for a substantially similar violation." 7 O.S.H. Cas. at 1063.

As stipulated by the parties, Sabia had been cited for the same or similar violation of section 1926.451(a)(4) on three previous occasions, and "each citation went to a final order." Jt. App. 20. Hence, the stipulated facts, under the Secretary's theory, establish a "repeated" violation under the Potlatch standard.

As noted earlier in this opinion, the Commission had held that the Potlatch standard could not be applied in this circuit as it conflicted with the standard articulated in Bethlehem. In Bethlehem, which was the first court of appeals decision to construe the term "repeatedly" as it appeared in the unamended 29 U.S.C. 666(a), we held that a violation is "repeated" if (1) the employer had violated the same standard on at least two previous occasions; and (2) the employer "flaunted" the requirements of the Act. Bethlehem 540 F.2d at 162. In determining whether an employer had "flaunted" the requirements of the Act, the Bethlehem court considered the following factors:

the number, proximity in time, nature and
extent of violations, their factual and legal
relatedness, the degree of care of the em-

> ployer in his efforts to prevent violations
> of the type involved, and the nature of the
> duties, standards, or regulations violated.

Id. at 162. The Commission found that the stipulated facts in the present case were insufficient to establish that Sabia had "flaunted" the requirements of the Act.

The Secretary asserts, however, that Bethlehem has been superseded, in light of the 1990 amendment to 29 U.S.C. 666(a). Sabia, on the other hand, argues that Bethlehemcontinues to be "good law" and will continue to be binding precedent until overruled by this court en banc.

We agree with the Secretary that Bethlehem does not control the disposition of this case. Although a panel of this court is bound by, and lacks authority to overrule, a published decision of a prior panel, see supra note 2, a panel may reevaluate a precedent in light of intervening authority and amendments to statutes or regulations. See United States v. Joshua, 976 F.2d 844, 853 (3d Cir. 1992) (holding that a panel is "free to consider the [Sentencing] Commission's [newly adopted interpretive] commentary and, based thereon, reach a decision contrary to the holdings of [prior precedent]"); United States v. Bass, 54 F.3d 125, 131 (3d Cir. 1995) (explaining that "Joshua, under certain circumstances, permits courts in this circuit to consider subsequent amendments to official guidelines commentary when interpreting prior guidelines, even if the new commentary conflicts with a panel's decision rendered prior to the amendment").

Our sister circuits abide by that self-same principle. See, e.g., Williams v. Ashland Eng'g Co., 45 F.3d 588, 592 (1st Cir.) ("An existing panel decision may be undermined by controlling authority, subsequently announced, such as an opinion of the Supreme Court, an en banc opinion of the circuit court, or a statutory overruling."), cert. denied, 116 S. Ct. 51 (1995); Mesa Verde Constr. Co. v. Northern Cal. Dist. Council of Laborers, 861 F.2d 1124, 1136 (9th Cir. 1988) (en banc) (holding that "if a panel finds that a NLRB interpretation of the labor laws is reasonable and consistent with those laws, the panel may adopt that interpretation even if circuit precedent is to the contrary"); Landreth v. Commissioner, 859 F.2d 643, 648 (9th Cir. 1988) (holding that a three-judge panel may reexamine circuit precedent "where Congress has retroactively clarified the meaning of the statute at issue"). Cf. also Patterson v. McLean Credit Union, 491 U.S. 164, 173 (1989) (precedent may be overruled when intervening development of law has "weakened" conceptual underpinnings of prior decision).

In the present case, two intervening developments radically altered the legal landscape which gave rise to the Bethlehem court's interpretation of section 666(a).

## A.

The first development that took place was the 1990

amendment to section 666(a), which for the first time distinguished between the civil penalties for a "willful" violation and those for a "repeated" violation. See Pub. L. 101-508, 3101, 104 Stat. 1388-29 (Nov. 5, 1990). In 1976, when Bethlehem was decided, section 666(a) imposed no floor as to penalties and imposed the same $10,000 penalty ceiling for "repeated" violations as for willful violations:

> Any employer who willfully or repeatedly violates the requirements of section 654 of this title . . . may be assessed a civil penalty of not more than $10,000 for each violation.

29 U.S.C. 666(a) (1976).

According to the Bethlehem court, the fact that the civil penalty limitations were the same for "repeated" and "willful" violations demonstrated that Congress intended that the term "repeated" be equated with the term "willful." The Bethlehem court, in defining the term "repeated," focused almost wholly on the penalty structure set forth in the then-section 666(a), which, as noted, did not distinguish between the two types of violations. To dispel any thought that the term "repeated" had a different meaning than the term "willful," the Bethlehem court reasoned that the violative conduct must be sufficiently flagrant to rise to the level of "willful" conduct. In concluding that "the . . . conduct which [the term] 'repeatedly' encompasses must be similar to that which would raise an inference of willfulness," Bethlehem, 540 F.2d at 162, the court relied conclusively on the fact that section 666(a) authorized identical civil penalties for "repeated" and "willful" violations.

It was only with the 1990 amendment to section 666(a) that the statutory landscape changed. That amendment, by requiring a $5,000 minimum penalty for willful violations but not for repeated violations, negated the central premise underlying the Bethlehem decision. Regardless of the validity of Bethle-

hem's reasoning with respect to the pre-1990 section 666(a), that statute, as amended, clearly shows that Congress, at least by and after 1990, intended a substantive distinction between a willfulviolation and a violation that is repeated but not willful.
Hence, under the amended statute, Bethlehem's interpretation of section 666(a), which equates "repeated" with "willful," is no longer justified.

### B.

Secondly, subsequent Supreme Court precedent has also undercut Bethlehem. Specifically, Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), decided some eight years after Bethlehem, established that a federal court must defer to a reasonable construction of a statute by the administrative agency charged with administering the statute if Congress has not directly spoken to the precise question at issue. Id. at 843, 846 ("[A] court may not

substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency. . . . If the agency's choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, [a court] should not disturb it unless it appears from the statute . . . that the accommodation is not one that Congress would have sanctioned."); see also, e.g., Elizabeth Blackwell Health Ctr. for Women v. Knoll, 61 F.3d 170, 182 (3d Cir. 1995), cert. denied, 116 S. Ct. 816 (1996).

Recently, the Supreme Court reemphasized that courts must defer to an agency's interpretation of statutes that the agency is charged with administering, explaining why such a high degree of deference is owed:

> It is our practice to defer to the reasonable judgments of agencies with regard to the meaning of ambiguous terms in statutes they are charged with administering. . . . We accord deference to agencies . . . not be-
>
> cause of a presumption they drafted the pro-
>
> visions in question, or were present at the hearings, or spoke to the principal sponsors; but rather because of a presumption that Congress, when it left ambiguity in a statute meant for implementation by an agency, under-
>
> stood that the ambiguity would be resolved, first and foremost, by the agency, and de-
>
> sired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows. . . . [T]he whole point of Chevron is to leave the discretion provided by the ambiguities of a statute with the implementing agency.

Smiley v. CitiBank (South Dakota), N.A., 116 S. Ct. 1730, 1733-34 (1996).

At the time that Bethlehem was decided, the court did not have the benefit of the Supreme Court's pronouncements in Chevron and Smiley. Moreover, at the time, it was unclear whether deference was owed to the Secretary or the Commission when the two administrative actors disagreed. See Budd Co. v. OSHRC, 513 F.2d 201, 205 n.12 (3d Cir. 1975) ("[W]e need not address the question whether the court should afford greater respect to the Commission's interpretation or the Secretary's when the two are unable to agree as to the proper construction of a safety standard."); see also Bethlehem Steel Corp. v. OSHRC, 573 F.2d 157, 160 (3d Cir. 1978) ("Bethlehem II") ("Unlike Budd, we do not have an authoritative agency interpretation to assist us since the decisions of the Commission are themselves in conflict and inconsistent with the Secretary's position. We rely, therefore, on the plain wording of the standard . . . .").

Hence, the Bethlehem court had not deferred to the Secretary's construction of section 666(a), opting instead to exercise plenary review. See Bethlehem, 540 F.2d at 160 ("This is a question of law, and our review is necessarily broad."). Since then, of course, the Supreme Court has explicitly held that the Secretary is the administrative actor to whom deference is owed. See Martin v. OSHRC, 499 U.S. 144, 152 (1991) ("The power to render authoritative interpretations of OSH Act regulations is a 'necessary adjunct' of the Secretary's powers to promulgate and to enforce national health and safety standards."). Under Martin, a federal court should defer to the Secretary where there is a disagreement between the Secretary and the Commission. By employing a plenary standard of review and failing to defer to the Secretary's interpretation of section 666(a), Bethlehem offended the Martin standard.

Finally, it is evident that the Secretary's interpretation of the term "repeatedly" in the post-1990 section 666(a) represents not only a reasonable interpretation but one that is plainly consistent with the language of the statute. Enhanced liability for a second or subsequent violation of the same or similar regulation or standard is appropriate because once an employer has been found to have violated the Act, it is reasonable to expect that extra precautions will be taken to prevent a "repeated" violation.

IV.

Although Sabia insists that we are bound by Bethlehem, our analysis, which is informed by a different statute and a new standard of review, dictates otherwise. In our opinion, the Bethlehem court correctly decided the issue before it. It did so in light of the statutory text which it was called upon to interpret and in light of the standard by which it reviewed the statute before it. Since then, as we have earlier observed, the statute and the standard of review have changed so that Bethlehem no longer controls our disposition.

We therefore conclude that a violation is "repeated" "if, at the time of the alleged repeated violation, there was a Commission final order against the same employer for a substan-

tially similar violation." Potlatch, 7 O.S.H. Cas. at 1063. Accordingly, the formula prescribed in Bethlehem for determining when a repeated violation occurs is no longer operative. A repeated violation requires no more than a second violation and does not require proof of "flaunting." Since Sabia stipulated that it had been cited for "the same or similar violation" of section 1926.451(a)(4) on May 16, 1991, a little more than two years before the present violation, and that the citation had resulted in a final order of the Commission, we necessarily conclude that Sabia's violation was "repeated" within the meaning of section 666(a).

We therefore grant the Secretary's petition for review. We will vacate the order of the Commission, and we will remand to the Commission with the direction that the Commission reinstate the November 25, 1994 order of the ALJ affirming the citation and

imposing a penalty of $4,000 as stipulated by the parties.  Jt. App. 15.